**CONRAD CHEVROLET, INC., Appellant,**

v.

**J. Douglas ROOD; Taft McKinstry Rood and Fowler, Measle & Bell, Appellees.**

**92–SC–235–TG.**

Supreme Court of Kentucky.

Sept. 2, 1993.

As Modified on Denial of Rehearing
Oct. 28, 1993.

Robert S. Miller, Harry B. Miller, Jr., Frank T. Becker, Michael D. Meuser, Miller, Griffin & Marks, Lexington, for appellant.

C. Gibson Downing, Jr., Downing, Matthews & Wilmott, Lexington, Edward H. Stopher, Philip J. Edwards, Boehl, Stopher & Graves, Louisville, for appellees.

CHARLES R. COY, Special Justice.

This is an action commenced in the Fayette Circuit Court by Conrad Chevrolet, Inc., upon a verified complaint, against J. Douglas Rood, Taft McKinstry Rood (hereafter McKinstry) and Fowler, Measle & Bell, a partnership. The complaint alleges the negligence of McKinstry in a dual representation of Conrad Chevrolet, Inc., and her husband, J. Douglas Rood, in the sale by Conrad of a Jeep/Eagle franchise to Rood and Blackhorse Motor Works, Inc. The complaint also alleges fraud on the part of Rood and McKinstry. Summary judgment on both the professional negligence and the fraud claim was entered in the court below. Conrad appeals.

Some understanding of the factual backdrop to this case is essential to an understanding of it. For several years the law firm of Fowler, Measle and Bell had represented Conrad Chevrolet, Inc. and appellee McKinstry had done work for it within the firm. In addition, she was the spouse of Rood who was the principal in Blackhorse Motor Works, Inc. The firm had also done work for Blackhorse and it was a regular

client of the law firm. Sometime in late 1988 Richard Conrad, acting on behalf of Conrad, and J. Douglas Rood, acting on behalf of Blackhorse, entered into negotiations for the sale and purchase of the Jeep/Eagle franchise which Conrad held.

McKinstry then undertook a limited representation of both parties in the asset transfer transaction. Her role was to prepare the Asset Purchase Agreement. Conrad alleges in its verified complaint that the agreement, as directed by Conrad and represented by McKinstry, was to follow the basic form of an agreement which McKinstry had previously prepared for Conrad in a transaction with Jeff Sachs. However, the basic "economic terms" were to be supplied from direct negotiations between Conrad and Blackhorse and the law firm was to represent both. At the closing, Conrad alleges a letter from the law firm prepared by McKinstry and bearing date of January 23, 1989, was presented along with all of the other closing instruments.

The agreement, as presented and executed, contained neither the retained security interest as in the Sachs' agreement nor the personal guarantee of Rood as evidenced by a handwritten note in the file of the firm calling for "pers. guarantee." It should also be noted that the Sachs' agreement had also contained a personal guarantee but there was a difference in that the transaction with Sachs was with an individual.

Subsequent to the execution of the agreement the transaction went "sour" and Conrad was not paid, according to the terms of the agreement. There was a default of the first annual payment due Conrad on August 14, 1990. Conrad began collection efforts against Blackhorse. Blackhorse then entered into negotiations with Ellerslie Corporation for sale of the Jeep/Eagle franchise and the remaining assets acquired from Conrad. Conrad signed the documents transferring the interest of Blackhorse to Ellerslie. The document signed by Conrad contained language that Conrad released all of its claims against Blackhorse arising out of the agreement.

Summary judgment was granted herein upon the premise that the letter signed at the closing by both appellant, Conrad Chevrolet, Inc., through Richard Conrad, and appellee, J. Douglas Rood and a corporation under his control, Blackhorse Motor Works, and addressed to appellee McKinstry, constituted a waiver of any claim that any or either of the parties might have against McKinstry or the law firm as a result of the representation of all parties to the letter. This letter was dated January 23, 1989, but according to the verified complaint of the plaintiff, it was not signed until the closing of the transaction in August, 1989.

This letter purported to waive any conflicts of interest which might exist between Conrad and Blackhorse so that McKinstry could represent both Conrad and Blackhorse in the sale of certain assets to Blackhorse by Conrad. McKinstry was married to Rood. In Conrad's verified complaint it is alleged that Richard Conrad directed and McKinstry represented that the basic form of the prior agreement between Conrad and Jeff Sachs would be followed, though the "economic" terms were to be agreed upon by the parties and provided for inclusion in the agreement.

Thereafter McKinstry prepared an agreement for the signature of all the parties. The closing of this transaction occurred on August 14, 1989. It was at the closing that the letter under date of January 23, 1989, according to Conrad, was presented to him for the first time. Conrad alleges that one of the terms of the Jeff Sachs' agreement was that a security interest was to be retained in Conrad's favor. The final agreement, as signed by the parties, contained no such provision. Another contention of Conrad is that the agreement was to be personally guaranteed by Rood and this contention gives rise to a very serious problem as to the existence of a genuine issue as to a material fact. There is support for this contention in the record in the form of the handwritten note in the law firm's file that would so indicate. There was no personal guarantee in the agreement drafted by McKinstry for signature at the closing, even though her file note indicates that there should be. This handwritten note does not appear in the verified complaint but does appear in an appendix to appellant Conrad's brief. This raises an is-

sue of fact as to whether this was an "economic term" agreed upon by the parties and not included in the written agreement.

As has been previously noted herein the facts upon which the summary judgment was granted are those alleged by the plaintiff in its verified complaint because no others were properly before the trial court upon its consideration of the motion for summary. Therefore, we look to the verified complaint for the purpose of ascertaining if there is a genuine issue of fact and if the moving party is entitled to a judgment as a matter of law. CR 56.03.

The standard for summary judgment is set forth in *Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985), which was reaffirmed in *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991). In *Steelvest* we held "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest* at 480. Furthermore, the standard for the granting of a summary judgment is: "the movant should not succeed unless his right to judgment is shown with such clarity that there is no room left for controversy ... Only when it appears impossible for the non-moving party to produce evidence at trial warranting a judgment in his favor should the motion for summary judgment be granted." *Id.* at 482.

■ In this case the trial judge concluded that appellant could not produce evidence at a trial which would warrant its recovery because of the waiver signed by Conrad at the closing. We hold that this "waiver" signed by Conrad cannot, as a matter of law, preclude a trial upon the issues raised by the verified complaint of appellant.

It is clear that the "waiver" if presented at the time of the closing as is alleged by appellant, as a part of many closing documents, may well be evidence of an overreaching on the part of McKinstry rather than barring recovery by appellant herein. At best, if it was presented as a part of the closing documents, it should be treated as an ineffective waiver and therefore of no force and effect. Because this Court concludes that the waiver may be evidence having a bearing on the

factual issues between the parties, but is not of conclusive effect, the case must be reversed for proof upon the issues raised by Conrad's complaint.

This issue is governed by SCR 3.130, Kentucky Rules of Professional Conduct, Rule 1.7(b). Appellee asserts that the waiver executed by Conrad at the closing would constitute "a consent after consultation" under the rule. McKinstry was the spouse of Rood, had information with respect to the financial condition of Blackhorse, and disclosure of that information was essential to Conrad, just as it was essential to Blackhorse for it not to be revealed. There was no consent after consultation, because there was no consultation, nor could there be under the circumstances here presented. There could be no consent because McKinstry had an obligation under the rule to withdraw from representing both.

■ Appellant also raises an issue as to the question of fraud which the trial judge found to be insufficiently alleged under CR 9.02. Count II of the complaint is headed FRAUD, it alleges that the acts of McKinstry in the acts complained of were fraudulent and that McKinstry "used and abused the trust and confidence" reposed in her by appellant. The allegations are sufficient to raise an issue as to the fraud of McKinstry.

The case is reversed and remanded for a trial of the issues raised by the verified complaint of Conrad.

LEIBSON and REYNOLDS, JJ., concur.

LAMBERT, J., concurs in result only.

SPAIN, J., dissents with a separate dissenting opinion in which COMBS and WINTERSHEIMER, JJ., join.

STEPHENS, C.J., not sitting.

SPAIN, Justice, dissenting.

I respectfully dissent. The trial court, in my opinion, correctly granted defendant's motion for summary judgment because the document dated January 23, 1989, served as a waiver and, thereby, disposed of the issue concerning the allegation under Count I of

legal malpractice. Accordingly, the allegations under Count II of fraud and a failure to disclose were, likewise, disposed of by the waiver. The January 23, 1989, document was a written agreement acknowledging the obvious conflicts of interest of Ms. McKinstry; viz., the fact that she was representing both parties at their request and that she was the spouse of Mr. Rood. Mr. Conrad, an experienced businessman who had attended law school for two years, knowingly signed this waiver. It is inconceivable to me that Mr. Conrad could ever have expected Ms. McKinstry, under the circumstances, to advise him independently of an instability in her husband's finances.

Whether the January 23, 1989, document was signed in January or at the closing in August is not, to me, material. It is clear from the document that Mr. Conrad was fully aware of all conflicts and "waived" those conflicts.

In preparing the document, an act Ms. McKinstry was employed to do for the convenience and thrift of both parties, the drafter could not be guilty of any conduct constituting legal negligence stemming from her mere assistance in reducing to writing the economic terms which the parties, themselves, negotiated. Importantly, Ms. McKinstry did not negotiate for either party, and that was made clear from the onset.

Furthermore, I am concerned with the statement of the majority that this "waiver" signed by Conrad cannot, as a matter of law, preclude a trial upon the issues raised by the verified complaint of appellant. Such a conclusion is premature. Certainly further proof could be adduced prior to trial demonstrating conclusively that Conrad's claims of legal negligence were effectively waived. It is misleading to imply otherwise.

In sum, I agree with the trial judge's finding that the activities of Taft McKinstry and Fowler, Measle and Bell were only in the form of *document preparation*. Because Mr. Conrad and Mr. Rood were fully aware of all conflicts and "waived" those conflicts, there were no facts to support a claim for legal

negligence. I would affirm the judgment of the trial court.

COMBS and WINTERSHEIMER, JJ., join this dissent.