**AMERICAN INSURANCE ASSOCIATION; National Association of Independent Insurers; and J. Joseph Cohen, Complainants,**

v.

**KENTUCKY BAR ASSOCIATION, Respondent.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and State Farm Fire and Casualty Company, Complainants,**

v.

**KENTUCKY BAR ASSOCIATION, Respondent.**

Nos. 95–SC–190–KB, 95–SC–191–KB.

Supreme Court of Kentucky.

March 21, 1996.

Steven G. Bolton, Squire N. Williams, Jr., Frankfort, for American Insurance Association; National Association of Independent Insurers; and J. Joseph Cohen.

---

Mark R. Overstreet, Stites & Harbison, Frankfort, for State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company.

Bruce K. Davis, Executive Director, Kentucky Bar Association, Frankfort, John G. Prather, Jr., Somerset, for Kentucky Bar Association.

STUMBO, Justice.

In this consolidated action, Complainants—American Insurance Association ["American"], National Association of Independent Insurers ["National"], and State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company ["State Farm"]—timely filed, pursuant to SCR 3.530, a motion seeking review by this Court of Advisory Ethics Opinion E–368 which was issued by the Board of Governors of Respondent, Kentucky Bar Association, and which appeared in the Fall 1994 issue of *Kentucky Bench & Bar.* In addition, State Farm requests that this Court review that portion of Unauthorized Practice of Law Opinion U–36 which proscribes the use, by insurance companies, of salaried attorneys to provide defense services under the insurers' policies of insurance. Although, as U–36 was issued in November 1981, the thirty-day window of review upon publication articulated in SCR 3.530(5) has long been closed, State Farm argues that because that opinion lays the foundation for E–368, this Court may exercise its general supervisory authority per § 116 of the Kentucky Constitution in order to review U–36.

After carefully evaluating the opinions at issue, and the briefs filed and arguments advanced by both Complainants and Respondent, we hereby approve and adopt E–368 as written, and choose not to disturb U–36.

At issue in this action is the following question presented in E–368:

(1) May a lawyer enter into a contract with a liability insurer in which the lawyer or his firm agrees to do all of the insurer's defense work for a set fee?

The Board of Governors answered "no" to this question, and stated that the arrangement at issue would violate Kentucky Rules of Professional Conduct 1.7(b)[1] and 1.8(f)(2)[2], stating therein "[t]o some extent the lawyer becomes the insurer; and [the] lawyer stands to gain by limiting the services rendered to the client." *Kentucky Bench & Bar,* Fall 1994, at 52. The Board, indicating that the lawyer's duty to the insured client was a function of the attorney-client relationship and not governed by or limited by the terms of the insurance contract, expressed concern that this set fee arrangement would result in the loss of control of the insured client vis-a-vis actions taken by counsel in the course of representation. The Board also noted that the insurer would take on a dual role in such a situation, in that "the insurer wants to continue to promise the insured a defense in the contract of insurance, while limiting the extent of its undertaking in a side contract between the insured's lawyer and the insurer to which the insured is not a party." *Id.* The Board characterized the circumstance presented in E–368 as but the latest issue to arise from attempts by insurers to cut costs. One such cost-cutting measure, referenced in the "Background" section of E–368 and more fully discussed in U–36, involved the practice of insurers to attempt to provide defense services directly through salaried attorney employees—a practice, the Board concluded, that "is not permitted in Kentucky, for in addition to the obvious conflicts of interest that would be presented by such an arrangement, the practice would vio-

---

1. Rule 1.7(b) states in pertinent part:

   A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
   (1) the lawyer reasonably believes the representation will not be adversely affected; and
   (2) the client consents after consultation.

2. Rule 1.8(f)(2) states in pertinent part:

   A lawyer shall not accept compensation for representing a client from one other than the client unless:
   . . . .
   (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship.

late the law governing unauthorized practice." *Id.*

More specifically, this issue was addressed in U–36 through the following question:

> May an insurance company employ in-house counsel (salaried employees) to represent their insured after a lawsuit has been filed?

This question was answered in the negative. The opinion relied upon both Canon 3 of the ABA Code of Professional Responsibility, which governs the areas of unauthorized practice of law, and SCR 3.020, which defines the practice of law in Kentucky and recognizes that "nothing herein shall prevent any natural person not holding himself out as a practicing attorney from drawing any instrument to which he is a party without consideration unto himself therefor...." The opinion also cited to long-standing Kentucky case law which proscribes a corporation from being licensed to practice a learned profession, such as law. *See, e.g., Hobson v. Kentucky Trust Co. of Louisville,* 303 Ky. 493, 197 S.W.2d 454 (1946); *Kendall v. Beiling,* 295 Ky. 782, 175 S.W.2d 489 (1943). Ethical rules and legal precedent were merged in the opinion to reach the conclusion that in the typical action on an insurance contract, the insured, and not the insurer, was the party-defendant, and that, therefore, "the insurance company must hire members of the private bar to undertake representation of their insured." Unauthorized Practice Opinions, November 1981, at 11–48.

Complainants contend that not only did the Board paint with too broad a brush in applying U–36 to E–368, but, that the former opinion, of itself, represents only a minority view of the interpretation of the ABA Code of Professional Responsibility, and is, in fact, antithetical to the precedent which attempts to follow the intent of the Code. Complainants seek support from the ethics opinions and case law of other jurisdictions which allow house counsel to provide insurance defense services. *See, e.g., In re Petition of Youngblood,* Tenn., 895 S.W.2d 322 (1995); *In re Rules Governing Conduct of Attorneys in Florida,* Fla., 220 So.2d 6 (1969); ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1370 (1976). Additionally, State Farm asserts that *Gardner v. North Carolina State Bar,* 316 N.C. 285, 341 S.E.2d 517 (1986), which is referenced in E–368 and which this Complainant terms "the sole court decision holding that the use of claim litigation counsel constitutes the unauthorized practice of law," Brief, at 36, lacks substance. State Farm points out that this decision has been rejected by every court to consider it. *See, e.g., Youngblood, supra; In re Allstate Ins. Co.,* Mo., 722 S.W.2d 947, 950 (1987).

In its attack upon U–36, State Farm goes so far as to characterize the opinion as "inconsistent with law and logic." Brief, at 29. The "law," to which State Farm refers, appears to be contained in those decisions of other jurisdictions which allow insurers to provide insurance defense services through salaried attorney employees. Such precedent, as State Farm explains, is based upon "the identity or community of financial interest between the insured and insurer in defending the claim and because of the insurer's contractual obligation to defend the insured at the insurer's expense." *Youngblood, supra,* at 330–331. The "logic," to which this Complainant refers, appears to lie within this rubric of "community of interest." For example, State Farm indicates that it is contradictory for U–36 to require the insurer to hire outside counsel to represent the insured once a complaint has been filed, and yet to allow an insurer's employees, including attorneys, to take actions necessary to protect the interests of *both* the insurer and its insured prior to the filing of a complaint, as this latter activity is "inextricably intertwined with any defense of the insured...." Brief, at 35. State Farm also asserts that as the prohibition against the unauthorized practice of law is designed to protect the public "from the incompetent, the untrained and the unscrupulous in the practice of law," *Frazee v. Citizens Fidelity Bank & Trust Co.,* Ky., 393 S.W.2d 778, 782 (1965), who could be more competent, trained and scrupulous therein than claims litigation counsel employed by insurance companies who, because their practice is concentrated in automobile and premises liability law, are able to specialize and become more proficient in the disposition of such matters. State Farm implies that the legal system as a whole would benefit from such house counsel, in that, as the compensation

of these attorneys is not tied to billable hours, they may be apt to dispose of these cases more quickly.

█ Notwithstanding the trends of other jurisdictions, any alleged nonsensical application of the prohibition against the unauthorized practice of law, and the untapped resource of "competent, trained and scrupulous" in-house insurance defense counsel as pipe cleaners for a clogged legal system, we do not feel that U–36 deserves review. The age-old adage of "if it ain't broke, don't fix it" seems appropriate in disposing of Complainants' argument herein, especially in light of the fact that U–36 first surfaced nearly fifteen years ago and there is now no compelling reason to overrule the more than fifty years of legal precedent which recognizes the principles outlined in that opinion. *See, e.g., Connell v. Kentucky Bar Ass'n,* Ky., 792 S.W.2d 369 (1990); *Kentucky Bar Ass'n v. Tiller,* Ky., 641 S.W.2d 421 (1982); *Manchester Ins. & Indem. Co. v. Grundy,* Ky., 531 S.W.2d 493 (1975); *Frazee, supra; Kentucky State Bar Ass'n v. Lakes,* Ky., 443 S.W.2d 248 (1969); *Kentucky State Bar Ass'n v. First Fed. Sav. & Loan Ass'n,* Ky., 342 S.W.2d 397 (1961); *Hargett v. Lake,* Ky., 305 S.W.2d 523 (1957); *Hobson, supra; Kendall, supra.* "[T]here is scarcely any judicial dissent from the proposition that a corporation cannot lawfully engage in the practice of law...." *Kendall,* 295 Ky., at 789, 175 S.W.2d 489. Moreover, "a corporation[ ] cannot obtain license to practice law, since it is wholly incapable of acquiring the educational qualifications necessary to obtain such license, nor can it possess in its corporate name the necessary moral character required therefor." *Hobson,* 303 Ky., at 503, 197 S.W.2d 454. Nothing has changed since the rendering of *Kendall* and *Hobson,* or since the adoption of U–36, to assuage the moral dilemmas and ethical concerns connected to the unauthorized practice of law. In fact, no situation is more illustrative of the inherent pitfalls and conflicts therein than that in which house counsel defends the insured while remaining on the payroll of the insurer. "No man can serve two masters," *Kentucky State Fair Bd. v. Fowler,* 310 Ky. 607, 615, 221 S.W.2d 435, 439 (1949), regardless here of either any perceived "community of interest," or Complainants' Pollyanna postulate that house counsel will continue to provide undivided loyalty to the insured. Complainants' pleas for logic are unpersuasive, as we are inclined to view U–36 in the way in which Respondent characterizes the opinion—as a prophylactic measure, not unlike the imputed disqualification rules. *See* Rule 1.10. As such, we believe that U–36 logically discerns when house counsel would fall into that precarious position between employee of insurer and advocate of insured, and, thus, logically prevents the occurrence of such a happening, and its onerous fallout.

█ Moreover, we are unswayed by Complainants' reliance on the practices of other jurisdictions and what amounts to an "everyone else is doing it, why can't we" argument. In *State Farm Mut. Auto. Ins. Co. v. Reeder,* Ky., 763 S.W.2d 116 (1988), the task of this Court was to evaluate our state's Unfair Claims Settlement Practices Act to determine if a third-party claimant injured by an insurance company's violation of that statute could maintain a private right of action for damages. In our decision, we were unaffected by the "substantial split in authority among other states as to whether individuals can maintain an action under their respective state laws." *Id.* at 118. In determining that such a cause of action did exist in the Commonwealth, we concluded that "[w]hether other states permit private individuals to maintain claims is based upon their particular statutory system and is of no consequence here. Our decision must be based on the language of the Kentucky law." *Id.* Likewise, the Kentucky Rules of Professional Conduct and the means by which this state oversees the conduct of its attorneys are personal to Kentucky. "The right to prescribe such rules as are necessary to qualify, regulate, and control attorneys as officers of the court is a right of self-preservation." *Ratterman v. Stapleton,* Ky., 371 S.W.2d 939, 941 (1963). That other jurisdictions govern the practice of law differently, or even allow for the unauthorized practice of law, is of no concern to us in this matter.

As for E–368, Complainants assert that there is no language within our Rules of Professional Conduct which prevents an attorney and an insurer from entering into an agreement whereby the attorney agrees to perform all of the insurer's defense work for a set fee. In support, Complainants analogize the set fee to other alternative billing methods—such as retainers and contingency fees—and argue that there exists no real difference between these latter, more accepted arrangements, and the set fee. Moreover, American and National contend that if any type of fee arrangement is to be viewed as suspect, it is the hourly-based fee, which, these Complainants argue, is vulnerable to "padding," and even creates a conflict of interest wherein the client has incentive to control costs by controlling counsel. The necessity to be free to exercise independent judgment in order that the attorney may adequately represent the insured is not, according to Complainants, jeopardized by the set fee arrangement, as the form of compensation is not as significant a factor in evaluating the propriety of the attorney-client relationship as, for example, whether or not the attorney has a personal interest in the outcome of the litigation. American and National assert that the high standards of ethical conduct with which attorneys must comply do not mandate a per se prohibition on set fee arrangements as such "a blanket prohibition is overbroad and does nothing to protect the integrity of the profession." Brief, at 13–14. Likewise, State Farm maintains that these ethical standards, which include counsel's implied duty of loyalty, mandate zealous representation of the insured, even if the set fee has been exhausted. Complainants remind us that not only does this Court have the power to defend the attorney-client relationship, but that, should this relationship break down and the insured incur damage, the insured would most likely have a cause of action against the attorney or the insurer or both.

Taking these latter propositions first, we agree that this Court does indeed have the power to protect the attorney-client relationship, and is, herein, exercising such power by adopting E–368 as written. Moreover, we do not take comfort, as Complainants do, in knowing that the insured, aggrieved by inadequate representation occasioned by the set fee arrangement, could proceed against the attorney and/or the insurer. Such recourse requires that the insured first suffer a harm, a circumstance which cannot be reconciled with this Court's view that the interest of the insured is to be protected. *See, e.g., Wolford v. Wolford,* Ky., 662 S.W.2d 835 (1984); *Manchester Ins. & Indem. Co. v. Grundy,* Ky., 531 S.W.2d 493 (1975). We also do not agree with Complainants' contention that the form of compensation has little relevance in examining the attorney-client relationship. To the contrary, a set fee arrangement enables the insurer to constrain counsel for the insured by, in effect, limiting the defense budget—a practice that Respondent cautioned, in E–331, could create ethical problems similar to those herein. We agree with Respondent that the pressures exerted by the insurer through the set fee interferes with the exercise of the attorney's independent professional judgment, in contravention of Rule 1.8(f)(2). The set fee arrangement also clashes with Rule 1.7(b) in that it creates a situation whereby the attorney has an interest in the outcome of the action which conflicts with the duties owed to the client: quite simply, in easy cases, counsel will take a financial windfall; in difficult cases, counsel will take a financial loss. Finally, Complainants' rationale that other, more commonly used and less restricted billing methods are not as bad as, just as bad as, or worse, than the set fee does not influence us in our review of E–368.

Complainants maintain that set fee arrangements do not create impermissible conflicts of interest between the insurance defense attorney and the insured. In support, Complainants again take solace with our Rules of Professional Conduct and contend that ethical constraints do not allow for the scope of representation to be dependent upon the fee counsel is to be paid. Additionally, Allstate and National retreat to the abstract and assert that potential conflicts of interest are everywhere, and not just confined to set fee arrangements. These Complainants argue that there is no rational basis which would support a conclusion that one form of

employment is more likely to generate conflicts than another, especially after considering that there is no guarantee that the attorney stands to substantially profit from a set fee arrangement. Moreover, State Farm contends that the potential for conflict is very often lacking, because in general, the interests of the insurer and the insured are aligned. According to State Farm, only when the coverage is in dispute is there any real conflict between these parties. *See, e.g., In re Allstate Ins. Co.,* Mo., 722 S.W.2d 947, 952 (1987); ABA Comm. on Professional Ethics and Grievances, Formal Opinion 282 (1950).

We dispose of these arguments by first stressing that the mere appearance of impropriety is just as egregious as any actual or real conflict. Therefore, E–368, in the same manner as U–36, acts as a prophylactic device to eliminate the potential for a conflict of interest or the compromise of an attorney's ethical and professional duties. Furthermore, we do not wear the blinders that Complainants apparently have in place, for we view the situation surrounding the set fee agreement as ripe with potential conflicts. Respondent was able to cite to nineteen such conflicts, including representation of the insured which becomes more complex than anticipated, resulting in financial hardship for the attorney; policy and/or coverage defenses asserted by the insurer against the insured; and disagreement between the insured and the insurer with regard to settlement negotiations. Moreover, we do not believe that in most instances the interests of the insured and the insurer are alike, but are more apt to agree with Respondent's contention that while the insured and the insurer may share some common interests, the two parties are subject to complete divergence at any time. Inherent in all of these potential conflicts is the fear that the entity paying the attorney, the insurer, and not the one to whom the attorney is obligated to defend, the insured, is controlling the legal representation.

Finally, Complainants attack the case law and ethics opinions upon which E–368 is founded. In particular, State Farm contends that E–368 cites to decisions which have either been overruled (Tennessee's Formal Ethics Opinion 93–F–132, reversed by *Youngblood, supra,* at 329), are inapposite as silent on the ethical issues addressed in E–368 (*Gardner, supra*), or lack a basis in law and precedent (U–36, discussed *supra*). Complainants also attack E–368 as overbroad and lacking any factual predicate. In arguing that a reasoned, fact-based analysis is required in order to evaluate potential conflicts of interest, State Farm relies on the commentary to the Kentucky Rules of Professional Conduct, which states, in part: "A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment...." Rule 1.7, cmt 3. Additionally, Allstate and National contend that the Board adopted the wrong version of E–368, in that a revised draft of the opinion better articulates the ethical standard which should apply to counsel involved in set fee arrangements. These Complainants note that the ethics opinions referenced in E–368—such as E–331 and E–340—bear out the assertion that blanket prohibitions are unnecessary where sufficient reliance is placed upon counsel's ability to comply with the ethical obligations owed to the client, including the requirement that counsel act in the best interest of the client.

First, we believe that the ethics opinions and case law cited in E–368 are on point, and defer to our previous discussion on the inapplicability of the decisions of other jurisdictions to Kentucky's own governance of professional responsibility. *See supra.* Moreover, we are convinced by Respondent's assertion that few of the other jurisdictions to which Complainants cite have conducted any meaningful analysis of the issues presented, nor do these jurisdictions share our state's aversion to the practice of law by corporations. For example, Respondent distinguishes the Tennessee opinion of *Youngblood,* from the North Carolina opinion of *Gardner,* by noting that Tennessee does not proscribe a corporation from practicing law for the public, whereas North Carolina does prohibit this practice, as does Kentucky. Finally, notwithstanding the language of other

574

ethics opinions issued by Respondent, or Complainants' argument regarding the alleged inadequacy of the language of the ethics opinion at issue, we find, as discussed above, that the language of E–368 is complete and articulate, and hold that the opinion clearly presents its stated purpose and rationale.

For the foregoing reasons, we approve E–368 as written, and do not disturb U–36.

STEPHENS, C.J., GRAVES, KING and WINTERSHEIMER, JJ., and OVERSTREET and YEWELL, Special Justices, concur.