NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0168n.06
Filed: March 2,2006

**No. 05-5355**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| DONALD M. SPEARS and PALMER HACKER, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| WILLIAM DONALD OVERBEY, | ) | |
| | ) | O P I N I O N |
| Defendant-Appellee, | ) | |
| | ) | |
| OVERBEY AND ADAMS, | ) | |
| | | |
| Defendants. | | |

BEFORE:    **MOORE**, **ROGERS, McKEAGUE**, Circuit Judges.

   **McKEAGUE**, Circuit Judge.

   Plaintiffs appeal the district court's grant of summary judgment for the defendant in this attorney malpractice action. The action arises from defendant William Overbey's representation of plaintiffs Palmer Hacker and Donald Spears. Overbey represented the pair in the formation of Hacker/Spears LLC, and various tasks associated with the purchase of the Pacer Inn, a motel in Murray, Kentucky. As part of the purchase transaction, Hacker and Spears executed personal guaranties for one million dollars. The LLC defaulted on the loan payments, and the bank foreclosed on the motel. After the foreclosure sale, a deficiency judgment was entered against Hacker and Spears.

In the present action, Hacker and Spears allege that Overbey was negligent, and breached his fiduciary duty because he did not advise them that he had represented the bank in other, unrelated matters over the course of many years prior to representing them during the purchase of the motel. They further allege that they would not have entered into the transaction if they had known that Overbey represented the bank in the past, and therefore, they would not now be liable on the personal guaranties.

The district court granted Overbey's motion for summary judgment, finding that Overbey did not represent two directly adverse clients in the same matter, and therefore, Overbey had no duty to disclose his prior representation of the bank to Spears and Hacker. Because plaintiffs failed to set forth facts sufficient to satisfy an element of their malpractice claim, the district court granted summary judgment to the defendant. For reasons that follow, we **AFFIRM** the grant of summary judgment to the defendant.

## I. JURISDICTION AND STANDARD OF REVIEW

The district court exercised jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship. Plaintiff Hacker is a citizen and resident of Mississippi and Plaintiff Spears is a citizen and resident of Arkansas. Defendant Overbey is a citizen and resident of Kentucky. The amount in controversy exceeds $75,000. This court has jurisdiction pursuant to 28 U.S.C. § 1291, because the district court rendered a final decision on February 3, 2005, when it granted defendant's motion for summary judgment.

This court reviews de novo a district court's grant of summary judgment. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment is proper "if the pleadings, depositions

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c); *accord Daniels v. Woodside*, 396 F. 3d 730, 734 (6th Cir. 2005). This court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986)(emphasis in original).

## II. FACTS

In 1999, Donald M. Spears ("Spears") and Palmer Hacker ("Hacker") decided to enter into a business relationship in order to purchase the Pacer Inn, a motel in Kentucky. Hacker, a hotel franchiser, contacted Spears because he believed the motel presented a good investment, and Spears had previously expressed interest in such an opportunity. Spears, a sophisticated real estate attorney, was interested in purchasing the Pacer Inn, and Hacker began negotiations with the People's Bank for the purchase of the motel on behalf of Spears and Hacker. The Pacer Inn was owned by the Thompson's; however, the Inn was subject to a 1.5 million dollar Small Business Association ("SBA") loan. As part of the purchase negotiations, Harold Doran ("Doran"), a representative of the People's Bank,[1] negotiated a buy down of the SBA loan to 1 million dollars. In fact, all of the

---

[1]"Peoples Bank" is now "Branch Bank and Trust" as the result of mergers subsequent to this transaction.

terms of the motel purchase were negotiated by Doran and Hacker, with Spears' approval. As part of the transaction, the bank required Spears and Hacker to sign personal guaranties for 1 million dollars. These guaranties were drafted by the bank, and were understood by Spears to be an inducement for the SBA to agree to the buy down on the 1.5 million dollar loan. Once the negotiations between the bank, the Thompson's and the SBA were complete, Hacker and Spears needed an attorney to assist them with the formation of a limited liability company ("LLC") and the preparation of the closing documents. Hacker asked Doran to recommend an attorney. Doran recommended Overbey, who represented the bank periodically for the preparation of deeds, foreclosure actions and similar transactions.[2] Hacker contacted Overbey, and secured his services for the LLC formation and the closing. Overbey completed the appropriate paperwork for the LLC formation, drafted the note and mortgage for the purchase of the Inn, and attended the closing at the bank.

The LLC defaulted on the loan payments in September, 2002. Subsequently, Overbey filed the foreclosure proceedings on behalf of Branch Bank and Trust. According to Hacker and Spears, this is the first notice they had that Overbey ever represented the bank. Overbey withdrew from this representation when he became aware of the conflict. The Inn was sold pursuant to court order, and a deficiency judgment was entered against Hacker/Spears LLC, Palmer Hacker and Donald Spears, jointly and severally in the amount of $657,039.75.

---

[2]Whether Hacker was aware that Overbey periodically represented the bank at the time of the referral is in dispute.

The plaintiffs filed this lawsuit after the foreclosure in September, 2003, alleging that Overbey's malpractice caused them to be held liable for the deficiency judgment, as a result of the personal guaranties executed in conjunction with the purchase of the Pacer Inn. Overbey filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, averring that there are no genuine issues of material fact, and that the he is entitled to judgment as a matter of law.

In their response brief, Hacker and Spears assert that Overbey was negligent because he did not disclose his previous representation of the bank. Plaintiff's assert that Overbey's failure to disclose this prior representation is in violation of The Kentucky Rules of Professional Conduct, SCR 3.130 (1.7). Further, plaintiffs state that if they had known of Overbey's "dual" representation, they would not have entered into the transaction at all, and therefore, would not now be liable on the note.[3]

The district court granted Overbey's motion for summary judgment on February 3, 2005, finding that there was no "direct adversity" in Overbey's representation of the plaintiffs during the course of this transaction, because Overbey never represented the bank's interest in this matter. In so finding, the court applied the language of Rule 1.7(a), which prohibits an attorney from representing a client, if the representation of that client will be directly adverse to another client, unless the attorney believes that the representation will not adversely affect the relationship with the

---

[3]In the complaint, Hacker and Spears allege that Overbey was negligent because he failed to draft the personal guaranties in a manner which would limit their liability to $100,000. (Complaint J.A. at 8). This theory of negligence was never advanced. Further, the theory is undermined by Spears own deposition testimony, wherein he states that his understanding of the personal guaranties was based on discussions with the bank, that Overbey was not involved in these negotiations, and that the personal guaranties were prepared by the bank. (Spears Deposition, J.A. at 185-197).

other client, and the client consents after the adverse relationship is disclosed by the lawyer. *Id.* The court found that Overbey had no duty of disclosure under this rule, because the plaintiffs did not introduce any evidence showing that Overbey represented the Bank on matters related to this discrete transaction, and therefore, there was no direct adversity implicated in Overbey's representation. The court reasoned that because there was no impermissible conflict of interest requiring disclosure under 1.7(a), Overbey did not commit the alleged breach.

During the course of its analysis, the district court found that Overbey and Adams, Overbey's current law firm, was not an appropriate party to this action, because the law firm was formed after the occurrence of the events giving rise to this litigation. The plaintiffs do not appeal the dismissal of this defendant.

On appeal, the plaintiffs do not argue that the district court erred in finding that there was no direct adversity implicated by Overbey's representation of Spears and Hacker under Rule 1.7(a). Rather, plaintiffs argue that the district court erred in granting summary judgment because the court failed to consider Rule 1.7(b), which "prohibits representation of a client if the representation may be materially limited by the lawyer's responsibilities to another client or by the lawyer's own interests." (Plaintiff's brief at 10) Plaintiffs urge that Overbey's relationship with the bank interfered with his ability to vigorously represent them, because it was against his *own* interest. The plaintiffs also aver that the district court ignored evidence provided by Overbey and Overbey's expert witness regarding the applicable standard of care. Each of these issues will be reviewed in turn.

## III. ANALYSIS

The district court properly found that the transactions giving rise to the complaint are those involving the purchase of the Pacer Inn, not the filing of the foreclosure suit by Overbey in 2002. Overbey promptly withdrew from this representation, and there are no damages associated with that particular incident. Instead, the alleged damages arise from the personal guaranties executed by Hacker and Spears at the time of the real estate closing. Therefore, it is Overbey's representation relating to the real estate transaction that must be scrutinized for malpractice.[4]

In order to prove legal malpractice in Kentucky, Hacker and Spears must establish that Overbey represented them; that in the course of representation, Overbey neglected his duty to act as a reasonable, competent attorney in similar circumstances; and that his negligence was the proximate cause of the damages. *See Marrs v. Kelly*, 95 S.W.3d 856 (Ky. 2003). Further "[t]o prove that the negligence of the attorney caused the plaintiff harm, the plaintiff must show that he would have fared better in the underlying claim; that is, but for the attorney's negligence, the plaintiff would have been more likely successful." *Id.*

For purposes of our analysis, we assume for argument's sake that Overbey represented Hacker and Spears as individuals for the formation of the LLC and at the real estate closing, thereby satisfying the first prong of the analysis.[5] Next, we must decide whether Overbey neglected his duty

---

[4]Spears and Hacker do not allege that Overbey was negligent in his representation of them during the formation of the LLC.

[5]In his brief, Overbey asserts that he never represented Spears and Hacker as individuals. However, for purposes of this appeal, we assume without deciding that Overbey did represent Spears and Hacker as individuals.

to act as a reasonable and competent attorney. In determining the standard of care for a claim

involving a conflict of interest, we rely on SCR 3.130 (1.7), Conflict of Interest. *See Conrad*

*Chevrolet Inc. v. Rood*, 862 S.W. 2d 312 (Ky. 1993). The rule states:

> (a) A lawyer shall not represent a client if the representation of that client will be
> directly adverse to another client, unless:
> (1) The lawyer reasonably believes the representation will not adversely affect the
> relationship with the other client; and
> (2) Each client consents after consultation.
> (b) A lawyer shall not represent a client if the representation of that client may be
> materially limited by the lawyer's responsibilities to another client or to a third
> person, or by the lawyer's own interests, unless:
> (1) The lawyer reasonably believes the representation will not be adversely affected;
> and
> (2) The client consents after consultation. When representation of multiple clients in
> a single matter is undertaken, the consultation shall include explanation of the
> implications of the common representation and the advantages and risks involved.

SCR 3.130 (1.7).

In granting Overbey's motion, the district court determined that the parties must be in direct

adversity to find a conflict of interest under 1.7(a). "In order to survive the motion for summary

judgment, then, Plaintiffs must have alleged facts sufficient for a jury to find Overbey represented

them in spite of 'direct adversity' of their interests to the interests of the Bank *in the capacity in*

*which he represented the Bank*." *Spears and Hacker v. Overbey, and Overbey & Adams,* No. 03-

CV-230-R slip op. at 4 (W.D. Ky. filed Feb. 3, 2005) (emphasis in original). The district court

found no evidence that the parties were in direct adversity to one another in this transaction.

Because the plaintiffs do not appeal the district court's determination under Rule 1.7(a), we

proceed to their claim of error with regard to Rule 1.7(b). Spears and Hacker state:

> the trial court erred in failing to consider paragraph (b) of Rule 1.7. That paragraph
> prohibits representation of a client if the representation may be materially limited by

the lawyer's responsibilities to another client or by the lawyer's own interests. Certainly, a lawyer has an interest in maintaining a good relationship with a long time client. In this case, Overbey had represented the bank for more than thirty years - the bank was certainly a long time client. Overbey had a personal interest in continuing the relationship which he had with the bank - that personal interest posed the probability that Overbey would do nothing in his representation of Hacker and Spears to damage his long time relationship with the bank.

Brief of Appellant at 10.

First, this particular theory establishing a conflict of interest was not succinctly stated below, and defendant asserts that it is improper for review at this juncture. Even if this is not so, we find that the plaintiff's theory of a conflict of interest under 1.7(b) is wholly without merit.

Under the plaintiff's theory, the threshold determination for a violation of 1.7(b) concerns whether Overbey was *materially limited* in his representation of plaintiffs because of his own interest in maintaining an ongoing relationship with the bank. Overbey was hired by Spears and Hacker to represent them in the formation of the LLC, to prepare the note and the mortgage, and to attend the closing. There is no indication anywhere in the record that Overbey was materially limited in his ability to perform these functions because of his relationship with the bank. In fact, there is no indication in the record that Overbey's performance of these tasks was in any way sub-standard.

The only plausible way in which Rule 1.7(b) could be implicated under this set of circumstances is if Overbey was retained by Spears and Hacker to negotiate the terms of the purchase on their behalf, and particularly, if Overbey had any involvement in negotiating the terms of, or the drafting of the guaranties. However, the record is clear that the terms of the entire transaction were negotiated between the bank and Spears and Hacker, without any involvement of

Overbey, and the guaranties were drafted by the bank. (Spears Deposition J.A. 196-97) Because we conclude that Overbey's representation was not materially limited by his own interests in preserving an ongoing relationship with the bank, there was no violation of Rule 1.7(b). This theory of a conflict of interest requiring disclosure is simply without merit.

The dissent insists that Overbey violated rule 1.7(b) because his representation of Spears and Hacker *may* have been materially limited due to his longstanding relationship with the bank. In so deciding, the dissent relies on three inapposite Kentucky Supreme Court Opinions interpreting Kentucky Bar Association Ethics Opinions; s*ee In re Advisory Opinion of Ky. Bar Ass'n*, 847 S.W.2d 723 (Ky. 1993); *In re Advisory Opinion of Ky. Bar Ass'n*, 613 S.W.2d 416 (Ky. 1981) and *Am. Ins. Ass'n v. Ky. Bar Ass'n*, 917 S.W.2d 568 (Ky. 1996). In the first case, the court found that a City Attorney would have an impermissible conflict of interest if he were to represent criminal defendants, thereby requiring him to cross examine the city police. "We are of the further opinion that the apparent potential for conflict endangering an attorney's ability to represent his client exists when a City Attorney undertakes to represent a criminal defendant who has been charged by the city police department." 847 S.W.2d at 724.

This opinion and our facts are distinguishable. First, the City Attorney has an ongoing employment relationship with the city, as do the city police officers. Overbey had no ongoing employment relationship with the bank nor was he on a retainer. Further, a conflict of interest is obvious when the City Attorney is *defending* an individual that the city police are *prosecuting*. There was no such direct conflict in our facts, wherein Overbey's scope of representation was limited to the preparation of a note and mortgage, and attending a real estate closing. Finally, the

opinion states that "criminal defense is a field of law that has become subject to intensive public scrutiny. Public demand for professional independence is great." *Id.* The court was addressing the special concerns underlying possible improprieties in the course of providing criminal defense, a concern that is simply not before us.

In the second case, *In re Advisory Opinion of Ky. Bar Ass'n*, 613 S.W.2d 416 (Ky. 1981), the court found that an attorney who represented the Fraternal Order of Police in grievance proceedings could not represent criminal defendants in the same jurisdiction. Again, we find these facts markedly different from those here. The court noted that a criminal defense attorney may have to vigorously cross examine a prosecuting officer in order to discredit the officer. *Id.* "Presented with the dilemma of alienating a group of police officers on the one hand and providing a criminal defendant with the most energetic possible defense on the other, the attorney faces a conflict which seriously endangers his ability to zealously represent his client. . . ." *Id.* Overbey was never in a position of obvious, direct, adversarial conflict during the course of his representation of Spears and Hacker, nor was he retained to vigorously represent them in a criminal defense matter involving his employer.

Finally the opinion in *Am. Ins. Ass'n v. Ky. Bar Ass'n*, 917 S.W.2d 568 (Ky. 1996) considered whether a lawyer can enter into a contract with a liability insurer, whereby the lawyer or his firm agrees to do all of the insurer's defense work for a set fee. *Id.* The court found that this scenario created an impermissible incentive for the lawyer to provide fewer services to the client, the insured, because payment would remain the same regardless of services rendered. *Id.* Further, under such a plan, the insurer is required to take on an impermissible dual role because "the insurer

wants to continue to promise the insured a defense in the contract of insurance, while limiting the extent of its undertaking in a side contract between the insured's lawyer and the insurer to which the insured is not a party." *Id.* at 569 (citation omitted) The opinion considers the conflict of interest that may arise between an *insurer* and its *insured* when the insurer implements cost containment measures in obtaining defense counsel for the insured. *Id.* Hence, this opinion offers no guidance in the resolution of this case.

The dissent ignores Kentucky Bar Association Ethics Opinion KBA E-148 (Issued July 1976), an opinion that is far more relevant. In KBA E-148, the Kentucky Bar determined that "[a]n attorney who was employed by a bank on numerous occasions over a period of years, but who was not paid a retainer, may accept employment adverse to the bank if the employment involves a matter unrelated to any matter on which the attorney was formerly employed by the bank." *Id.* It is undisputed that Overbey's representation of Hacker and Spears was completely unrelated to any matter for which he had previously represented the bank. Further, the opinion states: "[r]epresentation of a client in one matter does not in itself create any lawyer-client relationship with respect to other, unrelated matters, *In re Advisory Opinion,* 361 S.W.2d 111 (Ky. 1962). . . . Former representation of a client does not preclude subsequent representation adverse to him in a matter unrelated to the former representation . . . ." (citations omitted) Thus, even assuming that "some issue might arise after negotiations were completed and before the closing" as the dissent suggests, Overbey would still not be impermissibly conflicted because of his past representation of the bank.

Having found no conflict under 1.7(b), we now address plaintiff's second claim of error, namely, that the district court ignored "the evidence regarding the standard of care provided by Overbey and Overbey's expert witness." (Appellant's brief at 12) Plaintiffs point out that Thomas Keuler ("Keuler"), Overbey's expert stated "as to the alleged dual representation of Overbey in the purchase and loan transactions, the standard of care would require attorney Overbey to notify both the bank and the limited liability company of such dual representation." (Expert Opinion J.A at 65) However, viewing the expert's report in its entirety, it is apparent that his opinion was based on an incomplete review of the record, as well as inaccurate information. In particular, Keuler did not review the deposition testimony of Overbey or Hacker, and his opinion is based on "an allegation of dual representation", which states: "Defendant Overbey failed to disclose to Spears and Hacker that he represented the bank in connection with the purchase and loan transactions." (Expert Opinion J.A. 63) This allegation of directly adverse, "dual representation" is completely inaccurate, and any opinion based on it is without merit.

Further, we find that plaintiff's reliance on Overbey's deposition testimony to establish the standard of care is equally unpersuasive. Overbey states in his deposition that he believed that Hacker had a right to know that Overbey had represented the bank in the past, but he also states that he believed that Hacker already knew of his relationship with the bank by virtue of Doran's referral of Hacker to Overbey. He also clarified that his representation of the bank was for other, unrelated matters, and that he wasn't the exclusive attorney for the bank. Reviewed in its complete form, Overbey's one sentence testimony that Hacker had a right to know that he represented the bank can

hardly be taken as an expression of the standard of care for an attorney under the totality of these circumstances.  There was no error in the district court's decision to not rely on this evidence.

## IV. CONCLUSION

For the aforementioned reasons,  the district court's grant of  Defendant Overbey's motion for summary judgment is **AFFIRMED**.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Because I do not agree with the majority's interpretation or application of Kentucky Rule of Professional Conduct 1.7(b) in this case, I respectfully dissent.

Spears and Hacker argue that Overbey breached his duty of care as their attorney when he allegedly failed to inform them that he also represented the bank. Relying on Rule 1.7(b), Spears and Hacker explain that the conflict arose from the fact that "personal interest posed the probability that Overbey would do nothing in his representation of [them] to damage his long time relationship with the bank." Appellants Br. at 11. Rule 1.7(b) states as follows:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> (1) The lawyer reasonably believes the representation will not be adversely affected; and
> (2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

The majority concludes that the plaintiffs' theory regarding Rule 1.7(b) is "wholly without merit," because Overbey was not "materially limited" in carrying out his limited representation of Spears and Hacker. Majority Op. at 9.

The majority incorrectly assumes that a lawyer violates Rule 1.7(b) only if he or she is *actually* affected by a conflicting interest, whereas the rule prohibits representation even if the attorney "*may be* materially limited." On its face, then, the rule requires an attorney to avoid those cases in which there is a *potential* for such limitation, and simply putting one's clients at risk of limitation is a violation. The Kentucky Supreme Court's review of ethics opinions issued by the

Board of Governors of the Kentucky Bar Association supports this reading of Rule 1.7(6), as it "has held that interests other than direct adversity may prohibit representation." Appellants Br. at 11; s*ee In re Advisory Opinion of Ky. Bar Ass'n*, 847 S.W.2d 723, 723-24 (Ky. 1993) (affirming an ethics opinion stating that a city attorney may not participate in criminal defense matters that involve the city police because the risk of a conflict "is not completely removed"); *In re Advisory Opinion of Ky. Bar Ass'n*, 613 S.W.2d 416, 416 (Ky. 1981) (affirming an ethics opinion "[stating] that an attorney who represents the Fraternal Order of Police in grievances and other civil matters may not practice criminal law in the same jurisdiction" because of the probable conflict of interest). In a 1996 opinion, the state supreme court approved an ethics opinion stating that it is impermissible for "a lawyer [to] enter into a contract with a liability insurer in which the lawyer or his firm agrees to do all of the insurer's defense work for a set fee." *Am. Ins. Ass'n v. Ky. Bar Ass'n*, 917 S.W.2d 568, 569, 574 (Ky. 1996). The court explained that such contracts carry great risk of conflict, and that "while the insured and the insurer may share some common interests, the two parties are subject to complete divergence at any time." *Id*. at 573.

The majority argues that the above-cited opinions are distinguishable because this case does not arise in the criminal or insurance context. Majority Op. at 10-12. However, these opinions are relevant not because they present the same factual scenario, but because they illustrate that the principle articulated in Rule 1.7(b) is equally applicable to cases involving a potential for conflict as to cases involving a direct conflict. The majority instead cites Kentucky Bar Association, Ethics Opinion KBA E-148 (1976), an advisory-only ruling not adopted by the Kentucky Supreme Court. Ethics Opinion KBA E-148 states that "a private practitioner has no conflict of interest with respect

to an adverse party unless it is conflict based on concurrent or former representation of the now-adverse party in a matter substantially related to the present adverse employment." *Id.* Even if Ethics Opinion KBA E-148 were a relevant precedent, it is based upon different concerns than those that are presented in this case. Ethics Opinion KBA E-148 addressed a situation in which a *bank* objected to the representation of an adverse party by a lawyer that the bank had employed in the past. The Kentucky Bar Association cited old ABA Canon of Ethics 6 for its conclusion that such representation was not inappropriate: "The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed." This ethics opinion is thus focused on the notion of confidentiality of information. In contrast, the issue in this case is the possibility that Overbey's long-term representation of the bank could have some effect on his representation of Spears and Hacker because of Overbey's desire to maintain his relationship with the bank.

Overbey should have informed Spears and Hacker of his affiliation with the bank. The Kentucky Supreme Court Commentary to Rule 1.7(b) provides guidance in applying this provision:

> A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.

At the time that Overbey prepared the note and the mortgage for Spears and Hacker for the purchase of the Pacer Inn, he knew that these documents would be assigned to the bank. While Spears and Hacker negotiated the terms of the transaction on their own, there was always a chance that some

issue regarding the deal would arise after those negotiations were completed and before the closing. If such an issue had presented itself, Overbey's personal interest in maintaining his long-term representation of the bank may have limited his representation of Spears's and Hacker's interests. The closing also presented opportunities for conflict between the two parties. In fact, there was a brief dispute between Hacker and the bank's representative regarding the operating capital, which delayed the closing by several hours. J.A. at 400-01 (Overbey Dep.). Thus, while the majority may be correct that Overbey adequately performed the tasks for which he was hired by Spears and Hacker, there was nonetheless a potential for a conflict such that he should have notified his clients of his relationship with the bank.

There are disputed issues of material fact related to the conflict-of-interest claim, such as whether Overbey did in fact inform Spears and Hacker of his representation of the bank. I would accordingly reverse the district court's grant of summary judgment in favor of Overbey and remand for further proceedings.