KAREN NELSON MOORE, Circuit Judge.
Because I do not agree with the majority’s interpretation or application of Kentucky Rule of Professional Conduct 1.7(b) in this case, I respectfully dissent.
Spears and Hacker argue that Overbey breached his duty of care as their attorney when he allegedly failed to inform them *387 that he also represented the bank. Relying on Rule 1.7(b), Spears and Hacker explain that the conflict arose from the fact that “personal interest posed the probability that Overbey would do nothing in his representation of [them] to damage his long time relationship with the bank.” Appellants Br. at 11. Rule 1.7(b) states as follows:
A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer’s responsibilities to another client or to a third person, or by the lawyer’s own interests, unless:
(1) The lawyer reasonably believes the representation will not be adversely affected; and
(2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.
The majority concludes that the plaintiffs’ theory regarding Rule 1.7(b) is “wholly without merit,” because Overbey was not “materially limited” in carrying out his limited representation of Spears and Hacker. Majority Op. at-.
The majority incorrectly assumes that a lawyer violates Rule 1.7(b) only if he or she is actually affected by a conflicting interest, whereas the rule prohibits representation even if the attorney “may be materially limited.” On its face, then, the rule requires an attorney to avoid those cases in which there is a potential for such limitation, and simply putting one’s clients at risk of limitation is a violation. The Kentucky Supreme Court’s review of ethics opinions issued by the Board of Governors of the Kentucky Bar Association supports this reading of Rule 1.7(6), as it “has held that interests other than direct adversity may prohibit representation.” Appellants Br. at 11; see In re Advisory Opinion of Ky. Bar Ass’n, 847 S.W.2d 728, 723-24 (Ky.1993) (affirming an ethics opinion stating that a city attorney may not participate in criminal defense matters that involve the city police because the risk of a conflict “is not completely removed”); In re Advisory Opinion of Ky. Bar Ass’n, 613 S.W.2d 416, 416 (Ky.1981) (affirming an ethics opinion “[stating] that an attorney who represents the Fraternal Order of Police in grievances and other civil matters may not practice criminal law in the same jurisdiction” because of the probable conflict of interest). In a 1996 opinion, the state supreme court approved an ethics opinion stating that it is impermissible for “a lawyer [to] enter into a contract with a liability insurer in which the lawyer or his firm agrees to do all of the insurer’s defense work for a set fee.” Am. Ins. Ass’n v. Ky. Bar Ass’n, 917 S.W.2d 568, 569, 574 (Ky.1996). The court explained that such contracts carry great risk of conflict, and that “while the insured and the insurer may share some common interests, the two parties are subject to complete divergence at any time.” Id. at 573.
The majority argues that the above-cited opinions are distinguishable because this case does not arise in the criminal or insurance context. Majority Op. at 10-12. However, these opinions are relevant not because they present the same factual scenario, but because they illustrate that the principle articulated in Rule 1.7(b) is equally applicable to cases involving a potential for conflict as to cases involving a direct conflict. The majority instead cites Kentucky Bar Association, Ethics Opinion KBA E-148 (1976), an advisory-only ruling not adopted by the Kentucky Supreme Court. Ethics Opinion KBA E-148 states that “a private practitioner has no conflict *388 of interest with respect to an adverse party unless it is conflict based on concurrent or former representation of the now-adverse party in a matter substantially related to the present adverse employment.” Id. Even if Ethics Opinion KBA E-148 were a relevant precedent, it is based upon different concerns than those that are presented in this case. Ethics Opinion KBA E-148 addressed a situation in which a bank objected to the representation of an adverse party by a lawyer that the bank had employed in the past. The Kentucky Bar Association cited old ABA Canon of Ethics 6 for its conclusion that such representation was not inappropriate: “The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed.” This ethics opinion is thus focused on the notion of confidentiality of information. In contrast, the issue in this case is the possibility that Overbey’s long-term representation of the bank could have some effect on his representation of Spears and Hacker because of Overbey’s desire to maintain his relationship with the bank.
Overbey should have informed Spears and Hacker of his affiliation with the bank. The Kentucky Supreme Court Commentary to Rule 1.7(b) provides guidance in applying this provision:
A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer’s independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.
At the time that Overbey prepared the note and the mortgage for Spears and Hacker for the purchase of the Pacer Inn, he knew that these documents would be assigned to the bank. While Spears and Hacker negotiated the terms of the transaction on their own, there was always a chance that some issue regarding the deal would arise after those negotiations were completed and before the closing. If such an issue had presented itself, Overbey’s personal interest in maintaining his long-term representation of the bank may have limited his representation of Spears’s and Hacker’s interests. The closing also presented opportunities for conflict between the two parties. In fact, there was a brief dispute between Hacker and the bank’s representative regarding the operating capital, which delayed the closing by several hours. J.A. at 400-01 (Overbey Dep.). Thus, while the majority may be correct that Overbey adequately performed the tasks for which he was hired by Spears and Hacker, there was nonetheless a potential for a conflict such that he should have notified his clients of his relationship with the bank.
There are disputed issues of material fact related to the conflict-of-interest claim, such as whether Overbey did in fact inform Spears and Hacker of his representation of the bank. I would accordingly reverse the district court’s grant of summary judgment in favor of Overbey and remand for further proceedings.