## Hobson et al. v. Kentucky Trust Co. of Louisville, and five other cases.

September 27, 1946.

As Extended on Denial of Rehearing

December 10, 1946.

494

David R. Castleman and Lewis Carroll for appellant.

John G. Heyburn, Ben F. Washer, Percy N. Booth, Thomas J. Wood, Squire Ogden, James W. Stites, and Dan L. Street for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant, Robert P. Hobson—for himself as an attorney at law, as a member of both the local Louisville

Bar Association, and of the State Bar Association, and on behalf of all other attorneys, members of the State Bar Association—brought this action in the Jefferson circuit court against the appellee, Louisville Trust Company of Louisville, alleging in the petition that the defendant (appellee here), a corporation, is now and has been for many years past "engaged in the practice of law in this state without being licensed or sworn to do so, and in unlawful competition with the plaintiffs."

The specific acts which were alleged came within the orbit of, and constituted "Practicing Law," are then particularly set out, the substance of which is: (a) That defendant engages regularly and for compensation, as a part of its business, in the drafting of wills, deeds, trust instruments and other legal documents in which it is appointed, as agent or other fiduciary that may be required to carry out the provisions of the particular writing. That in doing so it gives legal advice to the maker of such documents with reference to the disposition or transmission of estates, as well as the rights of the beneficiaries and other pecuniarily interested parties therein; and (b) that it has engaged in the practice of law by conducting necessary litigation, through its *permanently* employed attorneys or other hired employees that may be required of it as the duly appointed fiduciary in the administration of its powers conferred upon it as such. The acts so briefly stated herein are more elaborately charged in plaintiffs' petition, but the general charges (a) and (b) supra embrace practically all of the complaints made in the petition. It is further alleged therein that defendants hold themselves out to the public as "being ready, willing and able to perform the aforesaid services" and that it advertizes and solicits such services from which it derives the compensation allowed by law for performing them or the amount agreed upon between it and the makers of the instruments or the beneficiaries thereunder.

At the time of filing this action a similar action was filed by the same plaintiffs against Citizens Fidelity Bank and Trust Company; Liberty National Bank and Trust Company; Louisville Trust Company; Lincoln Bank and Trust Company, and United States Trust Company, all of Louisville, Kentucky, against each of which the same charges were made and the same relief asked, which was and is that the court declare whether

or not the acts charged in the petitions constituted the practice of law, and if so that each defendant be enjoined from performing such services or the doing of such acts, since all of them are corporations and cannot acquire the educational qualifications to become a member of the Bar.

Each case in the trial court was practiced in the same manner, and from the final judgment rendered in each of them six separate appeals have been brought to this court and consolidated therein. Each defendant filed special demurrers to the petition against it, on the ground that plaintiffs had no right to maintain the action, but the court overruled it in each case. Following that action of the court, members of the Board of Commissioners of our Integrated Bar Association tendered and were permitted to file their intervening petition in which they adopted the allegations of the original petitions and joined in the prayer for the same relief.

The answers of each defendant, in its first paragraph, denied generally the allegations of the petitions, except as stated in the second paragraph in which it was alleged that the particular answering defendant is a banking and trust company, and that under the provisions of sections 287.210 and 395.005 of KRS, it is expressly authorized, and power conferred upon it to do and perform the acts and services complained of in the petition . Reference was then made to section 30.170 KRS, which is a part of our Integrated Bar Act enacted in 1934, Laws 1934, c. 3, wherein the Court of Appeals is authorized to make rules, but ''No rule adopted and promulgated under this section shall prevent a person not holding himself out as a practicing attorney from writing a deed, mortgage or will, or prevent a person from drawing any instrument to which he is a party.''

The answer attacks that part of that act delegating the authority to the Court of Appeals to adopt rules of practice as in conflict with sections 27 and 28 of our Constitution, the first one (27) dividing the state government into three departments, the Judicial, the Legislative and the Executive, and the second one (28) saying that ''no person or collection of persons, being of one of the departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter

expressly directed or permitted." Therefore, defendants attack our rule 18 as originally made, but now designated as section 3.020 of the rules of the Court, defining the phrase "Practice of Law," which rule is thus phrased:

" 'The practice of law' is any service rendered for a consideration involving legal knowledge or legal advice, whether of representation, counsel, advocacy in or out of court, rendered in respect to the rights, duties, obligations, liabilities, or business relations of one requiring the services. But nothing herein shall prevent any person not holding himself out as a practicing attorney from writing a deed, mortgage, or will without consideration unto himself for such service, and nothing herein shall prevent any natural person from drawing any instrument to which he is a party without consideration unto himself therefor."

The attack is grounded upon the contention that the Legislature in the enactment of our Integrated Bar Act attempted to confer upon the Court of Appeals legislative authority in conflict with section 28 supra of our Constitution. In effect, the attack denies the universally accepted doctrine that the making of rules of practice in courts, as well as out of courts, in matters pertaining to the rights of individuals under the law, is inherently possessed by courts and judges in carrying out the functions of administering the law affecting the rights of persons as between each other and as between them and the government. Such authority is universally accepted by the courts as properly embraced within the Judicial Department of the government.

After the filing of motions and other steps (unnecessary to be stated) the parties filed a stipulation of facts in which defendants agreed that they were engaged, and had been for a long time past, in performing practically all the acts and rendering the service alleged in the petitions; that it solicited such services and that, at least in most instances, the particular writing drawn by them designated them as fiduciary to carry out the provisions of such instrument so naming them, or to which they may be appointed, and for which they received at least the statutory compensation for such fiduciary services allowed by law, or an amount agreed upon between the parties. The cases were then submitted to the Court

and it adjudged "that all of the acts of the defendants as set out in the stipulation are authorized by the statutes thereto applicable (sections 287.210 and 395.001 KRS) and that rule 18 of the Court of Appeals of Kentucky, now rule 3.020, defining the practice of law, insofar as the same attempts to curtail the right to perform the said acts so stipulated, is invalid." (Our parenthesis.) It, therefore, dismissed the petitions followed by plaintiffs perfecting and taking these appeals.

Two questions of procedure are presented and vigorously argued by defendants' counsel, and which are, (1) improper parties plaintiff, and (2) that injunction is not the proper remedy. They will be disposed of first before discussing the merits.

(1) As stated above plaintiff, Robert P. Hobson, brought the action for himself as a qualified and acting attorney in the Commonwealth and for and on behalf of himself and all other duly licensed attorneys within the Commonwealth, which is designated in the law as a class action. He also fortified his right as an attorney at law to maintain the action by alleging that he held certain offices in his local bar association, as well as in the State Bar Association. Later the Board of Bar Commissioners created under the provisions of our Integrated Bar Act of 1934, intervened in the case and sought the same relief and made the same charges that plaintiff, Hobson, had made in the original petition. Therefore, if the original petitions were defective because of improper parties plaintiff it was cured by the intervening petition of the State Bar Commissioners, they being duly qualified to so proceed. However, we entertain no doubt, in view of the numerous cases and texts dealing with the question, that a duly licensed attorney who has, at the cost of much time and finances, qualified himself and obtained license to practice law, became thereby vested with a franchise or a property right which he may protect by employing any available remedy by which such protection may be obtained. The right thus obtained by an attorney is designated indiscriminately in opinions of courts and text writers as a "privilege" or as a "franchise," but those expressions are used synonymously, and as creating a property right. Moreover, attorneys are universally recognized and referred to as "officers of the court," qualified to aid and assist it in its function-

ing in the administering of justice, and to that extent they are or should be as much interested in the correct and proper administration of the laws of the country as is the court itself, and there is respectable authority holding that even when no direct pecuniary injury is sustained by an attorney he may in such capacity as an arm of the court, maintain an action to prevent the unlawful practice of law by an unlicensed person.

Some courts put the right of an attorney to maintain such an action on one ground, whilst others put it upon another, as will be seen from the text and citations in 5 A. J. 272, section 18, which says in part:

"It is unlawful for one to undertake to practice law without a license as prescribed by the local practice and laws, and he may be prosecuted therefor; a criminal prosecution may not, however, afford adequate relief, and it is generally held that duly licensed members of the bar may invoke the jurisdiction of the courts to restrain the illegal practice of law by others. * *."

That text is supported by the court in the case of Fitchette v. Taylor, 191 Minn. 582, 254 N. W. 910, 912, 94 A. L. R. 356, and annotations thereto in the A. L. R. report. The opinion of the court in that case in sustaining the right of a qualified attorney to maintain an action to prevent an unlicensed person from practicing law says, inter alia:

"Attorneys, as officers of court, exercise a privilege peculiar to themselves and not enjoyed by those outside of the profession. Hence, it is in a very real sense a franchise and property right. Dworken v. Apartment House Owners Association, 38 Ohio App. 265, 176 N. E. 577; Unger v. Landlords' Management Corp., 114 N. J. Eq. 68, 168 A. 229; Paul v. Stanley, 168 Wash. 371, 12 P. 2d 401. That is enough to show that these plaintiffs, suing not for themselves alone but for the benefit of all the affected members of their profession, are entitled to injunction to prevent the unlawful intrusion into their office and professional field of defendant Taylor. In such a case, the extent of the damage to the property right is unimportant. * *."

The same right is also upheld in the case of Bump v. District Court of Polk County, 232 Iowa 623, 5 N. W.

2d 914; and Bump v. Barnett, 235 Iowa 308, 16 N. W. 2d 579. Many other cases are cited in the foregoing opinion, but for the sake of brevity we will not list them, contenting ourselves with referring the reader to the cited cases. However, there appears to be but little, if any, dissent from the proposition that an acquired right to practice law vests the holder with a property right which he may protect against an intruder into the profession who had not likewise acquired a similar right. We conclude, therefore, that the special demurrer to the petitions were properly overruled.

(2) The remedy of injunction to prevent unlicensed persons from practicing law, notwithstanding the offender may be punished by attached penalties, or by contempt proceedings, is quite universally recognized by courts and text writers, some of which are in the list cited above in support of question (1). One of the many others approving and upholding the remedy of injunction is Nelson v. Smith, a Utah case appearing in 154 P. 2d 634, 642, 157 A. L. R. 521, which was a suit against the offending defendant by the Commissioners of the State Bar Association to enjoin defendant from engaging in the practice of law. In sustaining the right of plaintiff for an injunction and the authority of the court to grant the writ, the court said:

"The pleadings disclose that the defendants are illegally practicing law and therefore states a cause of action for injunctive relief. If the facts alleged can be proved the defendants should be enjoined from directly or indirectly rendering legal services for others and from soliciting claims under an agreement that they will bring and prosecute actions thereon in the courts. As to injunction being the proper remedy, see Depew v. Wichita Ass'n of Credit Men, 142 Kan. 403, 49 P. 2d 1041, certiorari denied, 297 U. S. 710, 56 S. Ct. 574, 80 L. Ed. 997; State Bar of Oklahoma v. Retail Credit Ass'n, 170 Okl. 246, 37 P. 2d 954; Paul v. Stanley, 168 Wash. 371, 12 P. 2d 401."

The cited cases in that excerpt sustain the availability of injunctive proceedings in such cases. It is also sustained by the text in 5 A. J. 272, section 17, wherein it is written that either of the remedies of contempt, penal action, or injunction are available to prevent an

unlicensed person from practicing law. After stating that the other two remedies might be resorted to the text says: "* * * or it (the unauthorized practice of law) may be challenged by a suit for an injunction, notwithstanding the fact that it constitutes a violation of the criminal law. * * *." (Our parenthesis).

In note (4) to that text the author cites annotations in 94 A. L. R. 359; the Fitchette case, supra, and the case of Rhode Island Bar Ass'n v. Automobile Service Ass'n, 55 R. I. 122, 179 A. 139, 100 A. L. R. 226. The opinion in the Rhode Island case contains a history of the commencement and growth of attorneys at law with the exclusive right when duly licensed to practice that profession, and in that historical sketch it is pointed out that the practice of law by members of the bar comes within the orbit, and is an adjunct to the Judicial Department of state as distinguished from the Legislative and the Executive Departments, and which sustains the constitutionality of our Integrated Bar Act by the enactment of which the Legislature concluded that the members of the bar were essentially a part of the Judicial Department and that they should be regulated, controlled, disciplined, and their qualifications defined by the courts, since that act turned all such matters over to the Court of Appeals, with but one qualification, i. e., that no rule defining the phrase, "Practice of Law," should be promulgated that would prevent one "not holding himself out as a practicing attorney from writing a deed, mortgage, or will, * * * (or) prevent any (party) from drawing any instrument to which he is a party."

It might be proper at this point to state that learned counsel for appellees argue and contend that the excerpt from the statute prevents this court from declaring in its rule 18, now rule 3.020, supra, that the practice of law shall be limited to natural persons, because under the excerpt it is a *party* to the instruments, the terms of which it enforces in its capacity as fiduciary. The answer to that contention is that—leaving out altogether the right of the Legislature to so interfere with the functions of the Judicial Department of State—the excerpt is not susceptible to the construction placed upon it by appellees' counsel. The word "party" in that excerpt clearly means one who has a beneficial interest in the corpus of the estate being administered by the fiduciary, and does

not apply to a fiduciary whose duties are purely ministerial.

Having disposed of all collateral or incidental questions argued by appellees' counsel, our next task is to determine whether the acts and services charged in the petitions—and practically admitted in the stipulation of facts—constitute "practicing law." That such activities and services are embraced within that phrase has been so thoroughly settled by both the determination of courts and text writers as to now be beyond dispute. The text in 5 A. J. 262, 263, section 3, is but an example and a substantial reproduction of what all other text writers say on what constitutes and is embraced within the term "Practicing Law." That text says that the practice of law is not limited to "the conduct of cases or litigation in court," but that it also embraces "all advice to clients * * * in matters of estates and guardianship * * * the preparation and drafting of all kinds of legal instruments, where the work done involved the determination by a trained legal mind of the legal effect of facts and conditions." Further along in the same section it is said:

"Other matters of a legal nature which are held to be an illegal practice of law by a corporation include the maintenance of a legal department to give free legal advice, the furnishing of legal services for members of a protective association, and the maintenance of a collection agency, but not the mere fact of paying the expenses of a *particular* litigation or the retainer of an attorney on an annual salary basis to attend to and conduct a corporation's *own* legal business." (Our emphasis)

The last paragraph of the section excludes the mere enforcement of trusts and duties in other fiduciary relations by performing the necessary ministerial acts by the fiduciary, which exclusion is approved by all courts and writers upon the question. In support of the text the cases supra of Rhode Island Bar Ass'n v. Automobile Service Ass'n and Fitchette v. Taylor are cited. Also Re Duncan 83 S. C. 186, 65 S. E. 210, 24 L. R. A., N. S., 750, 18 Ann. Cas. 657, and annotations in Ann. Cas. 1918C, 131, are cited. The latest collection of authorities defining the coverage of the phrase, "Practicing Law" is the annotation in 157 A. L. R. (referred to supra) be-

ginning on page 282 of that volume, and following the case of Hexter Title and Abstract Co. v. Grievance Committee, 5th Cong. Dist. State Bar of Texas, 142 Tex. 506, 179 S. W. 2d 946, 157 A. L. R. on page 268. The annotation, as well as the opinion of the Texas Court, not only defines the activities herein complained of as constituting practice of law, but also that in the very nature of things a legislative created person, known in the law as a corporation, cannot obtain license to practice law, since it is wholly incapable of acquiring the educational qualifications necessary to obtain such license, nor can it possess in its corporate name the necessary moral character required therefor.

However, and independently of what other courts and text writers may have written on the question, we, in the case of Howton v. Morrow, 269 Ky. 1, 106 S. W. 2d 81, 82, defined the practice of law thus: "Practicing law is not confined to performing services in actions or proceedings in courts of justice, but includes giving advice and preparing wills, contracts, deeds, mortgages, and other instruments of a legal nature." See also Com. ex rel. Wootton v. McCall, 256 Ky. 526, 76 S. W. 2d 594. Cases from other jurisdictions are cited in the Howton opinion.

Substantiating the inherent authority of courts to establish rules of practice and procedure are the domestic cases of Com. ex rel. Atty. Gen. v. Furste, 288 Ky. 631, 157 S. W. 2d 59, and Burton v. Mayer, 274 Ky. 263, 118 S. W. 2d 547, 549. Our declaration of such inherent rights of courts as made in the Burton opinion is:

"Rules of practice and procedure are, fundamentally, matters within the judicial power and subject to the control of the courts in the administration of justice. The courts accept legislative co-operation in rendering the judiciary more effective. They deny the right of legislative dominance in matters of this kind."

Also we, in the case of Com. ex rel. Ward v. Harrington, 266 Ky. 41, 98 S. W. 2d 53, 56, upheld the constitutionality of our Integrated Bar Act, and in the same opinion we also declared that the members of the State Bar Association "are assistants to and parts of the governmental court machines," and that this court in its administration of the Judicial Department of the Common-

wealth possessed inherent power to make and promulgate the rules and regulations set forth in the 1934 statute. Therefore, in following the provisions of the act this court approved its provisions and operated thereunder in promulgating its rule 3.020, sub. 18, under and by virtue of its inherent power and authority which it possessed without the enactment of the statute; from which it follows that the act made no delegation of legislative power to the Judicial Department.

The self-evident fact that a corporation cannot qualify so as to obtain license to practice law negatives their contention (and which appears to have been approved by the trial court) and that the section of our statute (287.210) granting the right to banks and trust companies to act as fiduciary, deprived this court of authority to create its rule 18 (now 3.020) confining the right to practice of law to natural individuals. But, as if that were not enough to negative that contention, the Legislature in the same Act granting such authority to corporations, also enacted section 287.220, which prescribes that such corporation:

"(1) When acting as a fiduciary or in any other capacity in which the duties, powers, liabilities, rights and compensation are regulated by law, or under the control or supervision of the court, banks and trust companies shall, except as provided in subsection (2) be subject to the same duties and responsibilities, *have the same rights and powers*, and receive the same compensation as is allowed the individual holding or exercising similar offices or trusts." (Our emphasis.)

The exception referred to in that section has no bearing on the questions here involved. We have already seen that a living individual can no more practice law without a license so to do than can a corporation, and he may be prevented from doing so by a member of the Bar in a proceeding to restrain him therefrom. The authorities so holding appear in many of the cited causes supra, which we have listed in support of other contentions made by counsel, and which is both logically and axiomatically correct. If, therefore, an individual may not practice law as sought to be enjoined herein, neither may the defendants engage in similar practice, which necessarily overrules what appears to be the two grounds

upon which the trial court based its judgment. It therefore follows that the court erred in rendering it. On the contrary, it should have sustained the prayer of the petition by permanently enjoining the defendants from engaging in, or performing regularly and as a business or advertising or soliciting and holding itself out to the public as qualified to so act (with or without compensation, directly or indirectly), any of the following acts in the circumstances indicated, to-wit: writing deeds, wills, conveyances and other legal documents requiring expert knowledge and equipment in their phraseology so as to comport with the law relating to such matters; or engaging in preparing any instrument wherein it is designated as fiduciary to enforce and administer the provisions in same, or to hold itself out as possessing the requisite knowledge so to do. If, however, the maker of such an instrument on isolated occasions should apply without solicitation on his own volition to defendants to act as the maker's amanuensis in framing the instrument he desires to execute, and for which defendant receives no compensation, it may perform such duty, and likewise it may, for and on behalf of itself when beneficially interested in the corpus of the trust (or the estate to be administered), prepare any instrument creating such benefit to itself as a "party"; but all other acts charged in the petition, and admitted by defendants, in which it is engaged as a permanent business for compensation should be permanently enjoined.

It is vigorously contended by defendants that to so confine their authority and activities as herein outlined would deprive them of the right to (a) institute probate proceedings; (b) following such proceedings through to a final settlement of the estate, and (c) from instituting proceedings to secure its appointment to such fiduciary position, all of which they assert would be completely at variance with the previous decisions of this court and in direct conflict with statutes enacted by the General Assembly of this Commonwealth. But clearly counsel is in error in construing our conclusions herein as having any such limiting effect on their authority. Each of those conclusions is erroneous as appears from the express provisions of subsection (1) of section 287.220 KRS in which it is enacted, as hereinbefore pointed out, that a corporate fiduciary shall "be subject to the same duties

and responsibilities, have the same rights and powers, and receive the same compensation as is allowed the individual holding or exercising similar offices or trusts.''

We have already shown that a layman individual when acting as a fiduciary may perform each and all of the acts enumerated in the alphabetical list of objections when such trust is conferred upon him in the manner hereinbefore outlined, but not because he holds himself out as a qualified expert in the performance of such duties, and engages therein as a profession for which he receives compensation. He, as such individual fiduciary, may when necessary employ an attorney to be paid out of the corpus of the estate administered by him, subject, however, to review by the court on exceptions to settlements filed by him. He may prepare his own settlements without the aid and advice of an attorney and perform any and all other administrative acts necessary to the complete fulfillment of the trust. But he may not engage in the business of soliciting his designation as such fiduciary and then employ a regular standing attorney to give him legal advice when necessary in administering the trust so solicited and obtained as his regular business for which he receives compensation. In short, we intend to and do hold that defendants may be and act in such fiduciary capacities but they can exercise no authority in such capacities, except those that may be exercised by a layman individual occupying the same status.

Counsel for both sides insist that this court point out *specifically* what acts the defendants as fiduciaries may perform, and the acts which they may not perform while acting in such capacity, but the request is practically unforeseeable and cannot be anticipated and judgment pronounced thereon. Therefore each case must stand upon its own facts thereby compelling us to not attempt to cross any such bridge or bridges until it or they are reached.

Wherefore, the judgment is reversed, and the rights of the parties are declared to be as hereinbefore outlined; such rights to be enforced through proper remedies when, if at all, the appellees may disregard them in the future.