**KENTUCKY BAR ASSOCIATION,**
Movant,

v.

**Sandra Camille BROOKS, Respondent.**

**No. 2010–SC–00000139–KB.**

Supreme Court of Kentucky.

Sept. 23, 2010.

## OPINION AND ORDER

Upon motion of the Kentucky Bar Association (KBA), this Court entered an order directing Sandra Camille Brooks to show cause why this Court should not hold her in contempt for her continued unauthorized practice of law in violation of an August 25, 2005 Order of this Court. The 2005 order held Respondent in contempt for her failure to abide by a 1997 KBA directive to cease and desist engaging in the unauthorized practice of law and, again, ordered her to refrain from the unauthorized practice of law. Respondent failed to timely respond to this Court's April 22, 2010 Show Cause Order. Nevertheless, a response was filed upon this Court's granting of Respondent's motion for an extension of time.

At the outset, we must address a challenge to this Court's jurisdiction. Respondent filed a motion to dismiss this case, asserting that the KBA has failed to state a claim upon which relief can be granted and further asserting that this Court lacks subject matter jurisdiction. Although there is no accompanying explanation or argument, we surmise that Respondent is questioning this Court's authority to discipline her, a non-lawyer, for the violation of a Supreme Court Rule governing the practice of law. First, Respondent's assertion would have been better directed to the previous 2005 proceedings wherein this Court sanctioned her and enjoined her from the unauthorized practice of law. At this juncture, the proceedings are merely contempt proceedings for Respondent's violation of our previous order. Clearly, there can be no legitimate challenge to this Court's jurisdiction to enforce its own order and to impose contempt sanctions for violations of such order. Nevertheless, because of the significance of a jurisdictional challenge, we will address the underlying issue of this Court's jurisdiction to enjoin and sanction non-lawyers for the unauthorized practice of law.

This Court has long exercised its jurisdiction to sanction and enjoin non-attorneys from practicing law without a license. *See, e.g., Hargett v. Lake,* 305

S.W.2d 523 (Ky.1957); *Carter v. Brien,* 309 S.W.2d 748 (Ky.1956); *Hobson v. Kentucky Trust Co. of Louisville,* 303 Ky. 493, 197 S.W.2d 454 (Ky.1946); *Kentucky State Bar Ass'n v. First Fed. Sav. & Loan Ass'n of Covington,* 342 S.W.2d 397 (Ky.1961); *Frazee v. Citizens Fid. Bank & Trust Co.,* 393 S.W.2d 778 (Ky.1964); *Kentucky State Bar Ass'n v. Kelly,* 421 S.W.2d 829 (Ky. 1967); *Kentucky Bar Ass'n v. Fox,* 536 S.W.2d 469 (Ky.1976); *Kentucky State Bar Ass'n v. Bailey,* 409 S.W.2d 530 (Ky.1966). Furthermore, the contention that this Court does not have jurisdiction to proceed against a nonmember of the legal profession for the unauthorized practice of law was expressly rejected in *Kentucky State Bar Ass'n v. First Fed. Sav. & Loan Ass'n of Covington,* 342 S.W.2d 397 (Ky.1960), a holding that was reaffirmed in *Kentucky State Bar Ass'n v. Tussey,* 476 S.W.2d 177 (Ky.1972).

Along with prior instances of sanctions and injunctions imposed by Kentucky's highest Court against non-lawyers for the unauthorized practice of law, *First Federal* relied on *In re Baker,* 8 N.J. 321, 85 A.2d 505 (1951) for its exercise of jurisdiction over non-lawyers. *Baker,* a decision of New Jersey's highest court, explained that jurisdiction was expressly granted by its Constitution, but even absent such express authority, inherent power existed in the Court to exercise jurisdiction over laymen who were practicing law without a license. Significantly, New Jersey's constitutional provision, N.J. Const. Art. VI, § 2, is very similar to Ky. Const. § 116.[1] Both provisions provide for the state's supreme court to govern admission to the bar and to discipline members of the bar. *Baker* explained that this express authorization to regulate licensed attorneys necessarily carried with it an implied corollary power

to sanction those who invade the province of the profession without obtaining admission to the bar. *Baker* eloquently stated the rationale as follows:

> It is generally conceded throughout the country that the power to control admissions to the bar and to discipline members of the bar is inherent in the judiciary. Here these powers have been expressly conferred on the Supreme Court by art. VI, sec. II, par. 3 of the Constitution: "The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted." But whether inherent or express, these powers over the admission and discipline of members of the bar would be meaningless and futile if laymen might practice law with impunity.... The reason for prohibiting the unauthorized practice of law by laymen is not to aid the legal profession but to safeguard the public from the disastrous results that are bound to flow from the activities of untrained and incompetent individuals, assuming to practice a learned profession which entails years of preparation and without being bound by the high standards of professional conduct and integrity which are imposed on members of the bar by the Canons of Professional Ethics, which are zealously enforced by the courts for the public good.

*Baker,* 85 A.2d at 511–12.

*Baker* gleaned insight from the highest courts of Illinois and Vermont, which had already addressed the issue. In *In re Morse,* 98 Vt. 85, 126 A. 550, 553 (1924), the Supreme Court of Vermont said:

> That the express legislative grant to this court of exclusive and full authority to determine who shall practice as attor-

---

1. Section 116 provides, in relevant part, that the Supreme Court "shall, by rule, govern admission to the bar and the discipline of members of the bar."

neys before the courts of this state carries with it the implied power to do whatever may be reasonably necessary to make such grant effective, even to punishing for contempt those pretending to such office, cannot be doubted.

Similarly, in *People ex rel. Ill. State Bar Ass'n v. Peoples Stock Yards State Bank*, 344 Ill. 462, 176 N.E. 901, 906 (1931), the Supreme Court of Illinois stated:

Having inherent and plenary power and original jurisdiction to decide who shall be admitted to practice as attorneys in this state, this court also has all the power and jurisdiction necessary to protect and enforce its rules and decisions in that respect. Having power to determine who shall and who shall not practice law in this state, and to license those who may act as attorneys and forbid others who do not measure up to the standards or come within the provisions of its rules, it necessarily follows that this court has the power to enforce its rules and decisions against offenders, even though they have never been licensed by this court. Of what avail is the power to license in the absence of power to prevent one not licensed from practicing as an attorney? In the absence of power to control or punish unauthorized persons who presume to practice as attorneys and officers of this court the power to control admissions to the bar would be nugatory. And so it has been held that the court, which alone has authority to license attorneys, has a necessary corollary ample implied power to protect this function by punishing unauthorized persons for usurping the privilege of acting as attorneys.

A related concept was addressed in *Hobson v. Kentucky Trust Co. of Louisville*, *supra*, which explained that unauthorized practice of law proceedings could be initiated not only by the bar association but by any practicing attorney because "an acquired right to practice law vests the holder with a 'property right' which he or she may protect against an intruder into the profession who has not likewise acquired such a similar right." 197 S.W.2d at 458.

We need not add to the explanations so amply set out in the foregoing authorities to justify our exercise of jurisdiction over Respondent in the first instance, wherein we sanctioned and enjoined her from the unauthorized practice of law. Moreover, as stated earlier, the current proceedings are not unauthorized practice proceedings, although that is the underlying infraction; rather, because this Court has previously entered an order enjoining Respondent from further engaging in the unauthorized practice of law, these proceedings are focused on whether Respondent should be held in contempt for violation of this Court's August 25, 2005 order. The nature of these proceedings being contempt as opposed to unauthorized practice of law removes them from the purview of SCR 3.460, which provides for the appointment of a special commissioner. In these contempt proceedings, Respondent has been offered an adequate opportunity to show cause why she should not be held in contempt of this Court's order. *See Commonwealth v. Pace*, 15 S.W.3d 393 (Ky.App., 2000). She has responded with a detailed explanation of the issues raised by her conduct and has submitted nine exhibits for the Court's consideration. We now turn to whether Respondent has indeed shown sufficient cause that she should not be held in contempt of this Court's 2005 Order.

Although Respondent is not admitted to practice law in this Commonwealth, Respondent has continuously operated a business, which she advertises as "Legal Self Help." In 1994, the KBA received information indicating that Movant was selling

legal forms, assisting customers in completion of the forms, and giving legal advice to customers, particularly concerning bankruptcy matters. This prompted an inquiry, followed by correspondence between the KBA and Respondent. The KBA obtained affidavits from two of Respondent's customers, stating that Respondent had given them legal advice and had provided them with extensive assistance in completing bankruptcy forms. The end result of the KBA's inquiry was a January 8, 1997 letter to Respondent. The letter noted, "You have also chosen to advertise in the Lexington Telephone Book under the 'attorneys' section, although you are not an attorney." The letter directed Respondent to cease and desist the unauthorized practice of law.

Despite this directive, in 2004, the United States Bankruptcy Court in the Eastern District of Kentucky found Respondent and her "Legal Self Help" business guilty of engaging in the unauthorized practice of law, a decision affirmed on appeal. Consequently, upon the KBA's motion, this Court ordered Respondent to show cause why she should not be held in contempt for violating the 1997 directive issued by the KBA. Respondent admitted that she had violated the 1997 directive. In an August 25, 2005 Order, this Court held Respondent in contempt and imposed a sanction of $1,500.00. Further, the Court, again, ordered Respondent to cease the unauthorized practice of law.

The current disciplinary proceeding arises from Respondent's continued advertisement of her Legal Self Help business under the "Attorneys" section of the 2009–2010 edition of the Windstream Yellow Pages (Yellow Pages) for the Greater Lexington Metro Area. The ad proclaims "Low Cost Legal Self Help ... Over 22 years Helping Our Customers Save Costly Legal Fees ... Hundreds of Legal Forms."

Further, Respondent's business was advertised under "Attorneys" on a refrigerator magnet attached to the front of the book. In August 2009, the Office of Bar Counsel (OBC) notified Respondent that this advertising contravened this Court's 2005 Order. In her reply, Respondent attempted to shift the responsibility for the advertisement to Yellow Pages by attaching their advertising terms and conditions, which explain that they determine the listing headings and are authorized to refuse to publish an advertiser under a particular heading. Respondent asserted that her request for them to add other headings had not been approved.

The OBC requested documentation showing that Respondent had indeed asked that her business not be listed under the "Attorneys" heading and also requested that Respondent obtain an affidavit from a Yellow Pages employee, verifying that Respondent had no control over the placement of her advertisement in the phone book or on the cover magnet and further verifying that it was the Yellow Pages' decision to list Respondent's business under the "Attorneys" heading. Subsequently, Respondent stated that Yellow Pages was in the process of assigning a new representative to her area, who was supposed to contact her in mid-November 2009. She attached the same documentation as previously provided. In January 2010, OBC followed up with a phone call to Respondent, inquiring about the status of the requested affidavit. Her written response averred that Yellow Pages had advised her that the company was in the process of changing its name, that it was extending its publishing cycle for three months, and that a representative would contact her at that time. Respondent did not mention any efforts undertaken to obtain the previously requested affidavit.

Accordingly, on April 22, 2010 this Court ordered Respondent to show cause why she should not be held in contempt for violating this Court's 2005 Order. In her response, Respondent seems to reason that a 2008 consent order and injunction issued by the United States Bankruptcy Court in the Eastern District of Kentucky proves that she is no longer engaged in the unauthorized practice of law. However, the 2008 Order appears to have been prompted by allegations of Respondent's continued violation of the Order issued by the Bankruptcy Court in 2004. The 2004 Order found that Respondent had engaged in the unauthorized practice of law and, in addition to imposing fines, required Respondent to submit weekly reports of customers purchasing "bankruptcy kits," essentially enabling the Bankruptcy Court to continually monitor her activities. This arrangement lasted until 2008 when yet another adversary proceeding was commenced, alleging further violations by Respondent; namely, that she was preparing bankruptcy petitions. The proceeding resulted in the aforementioned 2008 consent order and injunction wherein Respondent, without admitting any wrongdoing, agreed to cease selling bankruptcy forms and performing any acts constituting the practice of law in the area of bankruptcy. We fail to see how the 2008 Order provides a defense to Respondent's violation of this Court's 2005 Order.

Furthermore, the particular violation at issue here involves Respondent's holding herself out as an attorney through Yellow Pages' advertisements. On this issue, Respondent continues her attempt to shift responsibility for the advertisement to Yellow Pages. She attaches to her response an affidavit of a Yellow Pages employee representative. However, the affidavit does not comply with the information requested by the OBC. Rather, the affidavit, dated April 12, 2010, simply states that Respondent has requested that Yellow Pages add new headings but that Respondent understands that "Yellow Pages has full control over the Headings and Placement of the Advertisement and in no way promises that these new headings will be added." Respondent avers that she was contacted by Yellow Pages about a month after the execution of this affidavit and she was informed that Yellow Pages would be adding the headings of "Attorney—Pro se, Attorney—Self Representation, Attorney-Self Help," and that Respondent's business would be listed under the new headings in the next publication in July 2010. Consequently, Respondent asks this Court to abate this matter until July 2010 when she can demonstrate compliance with this Court's 2005 Order.

As already noted, however, the submitted affidavit does not indicate that Respondent had ever asked *not* to be listed under the "Attorneys" heading, the proof requested by the OBC. Moreover, other than Respondent's vague statement that she had asked Yellow Pages in the past to add new headings, Respondent does not offer evidence of any past communication she had with Yellow Pages to prevent her ads from appearing under this inappropriate heading. In fact, there is no indication that Respondent even informed Yellow Pages that she was not an attorney. Instead, Respondent explains that her business has been listed under this heading for the past twenty-six (26) years and without complaint prior to the 2005 Order. However, Respondent was on notice as early as 1997 that advertising under this section was impermissible. In its 1997 directive, the KBA detailed the information that it had obtained of Respondent's activities that constituted the unauthorized practice of law and explicitly noted "You have also chosen to advertise in the Lexington Tele-

phone Book under the 'attorneys' section, although you are not an attorney."

■ SCR 3.020 defines the practice of law as "any service rendered involving legal knowledge or legal advice, whether of representation, counsel or advocacy, in or out of court, rendered in respect to the rights, duties, obligations, liabilities, or business relations of one requiring the services." This Court has recognized that "it is incumbent upon this Court to maintain the integrity of the profession by ensuring that those who hold themselves out to the public as attorneys are authorized to do so." *Hipwell v. Kentucky Bar Ass'n*, 267 S.W.3d 682, 683 (Ky.2008).

In *Kentucky Bar Ass'n v. Legal Alternatives, Inc.*, 792 S.W.2d 368 (Ky.1990), this Court found an Oregon corporation, which advertised and offered services in Kentucky, to be engaged in the unauthorized practice of law where no attorneys were employed by the corporation. Although it provided disclaimers in its literature, the corporation was assisting clients in filling out legal forms, particularly in bankruptcy filings, in exchange for a fee. The corporation ignored a cease and desist letter from the KBA and this Court held it in contempt for doing so and imposed a $5,000.00 sanction. Other jurisdictions have also concluded that holding oneself out as an attorney constitutes the unauthorized practice of law. In *State ex rel. Indiana State Bar Ass'n v. Diaz*, 838 N.E.2d 433 (Ind.2005), a non-lawyer who provided immigration services to clients promoted her services by identifying herself as a Notary Public. Significantly, the titles "Notario publico" or "Notario" refer to an elite class of lawyers in many Latin American countries. The Supreme Court of Indiana concluded that utilizing these titles on advertisements and business cards, absent a conspicuous disclaimer that she was not an attorney, was inherently misleading and constituted the unauthorized practice of law. *See also In re Mittower*, 693 N.E.2d 555 (Ind.1998) (holding that designations of "esquire," "general counsel," and "attorney-in-fact," on business cards and letterhead by one who no longer held a license to practice law constituted the unauthorized practice of law).

■ In the instant matter, Respondent's advertising of her Legal Self Help business under the "Attorneys" heading in the Yellow Pages and on the cover magnet, as well as the description of her services within the advertisements, create the misleading impression that she is providing legal services in the capacity of an attorney. Such actions directly contravene this Court's August 25, 2005 Order. Further, Respondent's purported defense is unpersuasive. Merely tendering a document that contains the Yellow Pages' terms and conditions of advertising offers little support to Respondent's defense. Although the tendered document confirms that Yellow Pages determines headings and has the right to refuse to publish an advertisement under a particular heading, Respondent failed to show that she made Yellow Pages aware of her true status or requested that her business not be listed under the "Attorneys" heading, or that the listing was, in any way, contrary to her own request. Furthermore, the affidavit of the Yellow Pages employee supports only that Respondent has attempted to rectify the violation *after* these proceedings were initiated;[2] it offers no support that Respondent made any such efforts pursuant to the 1997 directive or the 2005 Order of this Court.

■ As such, we agree with the KBA that Respondent's advertisements violate

---

2. The new heading proposed by Respondent, we note, still contains the word "attorney."

this Court's 2005 Order to refrain from the unauthorized practice of law. Respondent was cautioned, as early as 1997, to refrain from advertising her business under the "Attorneys" section of the phone book. In light of Respondent's extensive disciplinary history concerning the very matters at issue here, a sanction of $5,000.00 is imposed for Respondent's continued contemptuous actions. Respondent is once again ordered to refrain from engaging in the unauthorized practice of law and we must also caution Respondent that each violation and sanction imposed for her unauthorized practice of law augments the disciplinary history that this Court will consider in imposing sanctions for future violations, if any, of the 2005 Order and this Order.

Accordingly, it is hereby ORDERED that:

1. Respondent is found to be in contempt of this Court for the unauthorized practice of law in violation of the August 25, 2005 Order of this Court.

2. Respondent is ordered not to engage in the unauthorized practice of law in the future.

3. Respondent is sanctioned for her contempt in the amount of Five Thousand Dollars ($5,000.00), to be paid to the Clerk of the Supreme Court for remittance to the General Fund of the Commonwealth within thirty (30) days of the date of the entry of this Order.

4. Respondent is responsible for costs or fees due or owing in connection with this action, if any, upon appropriate motion by the Kentucky Bar Association.

All sitting. All concur.

ENTERED: September 23, 2010.

/s/ John D. Minton, Jr.

Chief Justice