WILLIAM R. LUCERO PRESIDING DISCIPLINARY JUDGE
Kem W. Swarts ("Respondent") was suspended from the practice of law in 2010 and never sought reinstatement of his law license. Nevertheless, in 2016 he acted as the legal representative of a person who had been involved in a ski collision. Respondent's conduct in violation of Colo. RPC 3.4(c) and 5.5(a)(1) warrants a three-year suspension.
*1169 I. PROCEDURAL HISTORY
Alan C. Obye, Office of Attorney Regulation Counsel ("the People"), filed a complaint with Presiding Disciplinary Judge William R. Lucero (the "Court") on May 31, 2017. The People sent a copy of the complaint the same day to Respondent's registered business address as well as two last-known addresses. Respondent failed to answer. By order dated August 16, 2017, the Court entered default, thereby deeming admitted the allegations and claims in the complaint.
A sanctions hearing was originally set for November 1, 2017, but the Court continued the hearing to January 17, 2018. At the hearing that day, Obye represented the People and Respondent did not appear. The People's exhibits 1-2 were admitted into evidence. No testimony was provided.
II. ESTABLISHED FACTS AND RULE VIOLATIONS
The Court adopts and incorporates by reference the averments in the admitted complaint, presented here in condensed form. Respondent took the oath of admission and was admitted to practice law in Colorado on March 10, 1998, under attorney registration number 29242. He is thus subject to the Court's jurisdiction in this disciplinary proceeding.[1]
In June 2010, the Court issued an order suspending Respondent's law license for ninety days, with the requirement that he file for reinstatement, if at all, under C.R.C.P. 251.29(c). This order, which was issued under case number 09PDJ080, was based on Respondent's practice of law in violation of an administrative suspension order by representing his wife in a matter in Arapahoe County Court. Respondent's administrative suspension had been premised on his failure to comply with rules governing continuing legal education and registration fees. Respondent has never been reinstated from his disciplinary suspension.
The present case relates to the aftermath of a March 2015 collision at Breckenridge ski resort between two skiers, Vivien Russell and Artur Kunzek. Following the collision, Russell retained attorneys Russell Hatten and Michael Kleeman. Kleeman wrote to Kunzek in February 2016, saying that Russell had retained his office in connection with injuries she suffered in the collision. The letter asked Kunzek to notify his homeowners' insurance company of Russell's claim.
In May 2016, Respondent wrote to Kleeman on Kunzek's behalf. The letterhead of Respondent's letter reads: "GLOBAL TECHNOLOGIES, LTD. GENERAL COUNSEL."[2] Respondent's address, phone number, and email address appear on one side of the letterhead. The other side reads: "RETIRED Colorado Nebraska Iowa Arizona."[3] The body of the letter states:
[W]e have completed a very brief investigation with the ski area, ski patrol, and witnesses. From the statements, it is apparent that Vivien Russell was at fault as [sic] her descent form [sic] the peak chair lift; she was skiing improperly, skiing across the heavy traffic upon exiting from the chair lift.
Regarding homeowner insurance or lack thereof, Artur Kunzek[ ] has renter insurance for the premises in Keystone. There is no coverage for this occurrence.
Lastly, Artur Kunzek has just completed his Chapter 7 proceedings and we are assisting him in his attempt to have a new economic start and to reestablish himself; thus this is pro bono.[4]
After receiving this letter and finding public records showing that Kunzek owned his residence in Breckenridge, Hatten attempted to call Respondent. Hatten left two messages but did not hear back from Respondent. Hatten then discovered that Respondent's law license was suspended.
After Respondent sent the May 2016 letter, Kunzek hired counsel. Kunzek's counsel sent Hatten a copy of Kunzek's homeowner's *1170 insurance policy, which had a $5,000.00 medical payments benefit and a $300,000.00 liability limit. According to Hatten, the policy refutes Respondent's statement that "[t]here is no coverage for [the collision]."[5] Russell sued Kunzek; the case settled and was dismissed in January 2017.
By acting as Kunzek's counsel while subject to a disciplinary order of suspension, Respondent violated Colo. RPC 3.4(c), which provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal. The same conduct also violated Colo. RPC 5.5(a)(1), which states that a lawyer shall not practice law without a law license or other specific authorization.
III. SANCTIONS
The American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards ")[6] and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[7] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.
ABA Standard 3.0-Duty, Mental State, and Injury
Duty : By practicing law in defiance of a disciplinary suspension order, Respondent violated his duties to both the legal system and the legal profession. Respondent held himself out as a lawyer by misrepresenting himself as "general counsel" and "retired."[8] His letter also made legal assertions on Kunzek's behalf.[9] Respondent's actions thus flouted the Colorado Supreme Court's disciplinary authority.
Mental State : The entry of default establishes that Respondent knowingly practiced law while under an order of suspension.
Injury : Respondent charged no fee for his work and there is no evidence that he meaningfully harmed Kunzek, although his misstatement about Kunzek's insurance could have created some difficulties for both Kunzek and opposing counsel. Respondent injured the legal system and legal profession by disobeying a court order that restricted his practice of law.
ABA Standards 4.0-7.0-Presumptive Sanction
In this case, four separate ABA Standards arguably apply:
• ABA Standard 8.1(a) provides that disbarment is generally warranted when a lawyer knowingly violates a prior disciplinary order, causing injury or potential injury to a client, the public, the legal system, or the legal profession.
• ABA Standard 8.1(b) pegs disbarment as the presumptive standard when a lawyer has been suspended for the same or similar misconduct,[10] yet knowingly engages in further misconduct that harms or potentially harms a client, the public, the legal system, or the profession.
• ABA Standard 6.22 calls for suspension when a lawyer knowingly violates a court order, causing injury or potential injury to a client or other party or *1171 causing interference or potential interference with a legal proceeding.
• ABA Standard 7.2 provides that suspension is generally warranted when a lawyer knowingly engages in conduct that violates a duty owed as a professional, thereby causing injury or potential injury to a client, the public, or the legal system.
The Court recognizes that ABA Standard 8.0 is unique among the Standards because it serves as an overlay to other presumptive sanctions. The Colorado Supreme Court has elected to apply Standards 8.1(a) or (b) in a variety of cases in which the elements enumerated in those Standards are present,[11] yet it has not mentioned Standards 8.1(a) or (b) in other cases in which the elements appear to have been satisfied.[12] Though the Colorado Supreme Court has not set forth a framework guiding application of Standards 8.1(a) and (b), guidance may be drawn from the tenor of the case law as well as from the Annotated Standards for Imposing Lawyer Sanctions .
As explained in the Annotated Standards for Imposing Lawyer Sanctions, Standard 8.1(a), in particular, exists to maintain the integrity of the disciplinary process as well as to protect the public.[13] In other jurisdictions, Standard 8.1(a) is "nearly always" applied when a violation of a disciplinary order causes injury or potential injury, whether to a client, the public, the legal system, or the legal profession.[14] Standard 8.1(b), meanwhile, "protect[s] the public from further misdeeds when lesser sanctions have proved inadequate to dissuade similar misconduct."[15] In addition, Standard 8.1(b) helps to maintain the efficacy of the disciplinary system by deterring further misconduct and providing a clear message to other lawyers.[16] As this Court understands it, Standards 8.1(a) or (b)-as "presumptive sanctions"-normally should be applied where their elements are satisfied so as to promote consistency.[17] Yet in limited circumstances,[18] these Standards may be deemed unsuitable based on factors including the degree of injury or potential injury,[19] whether recidivism appears likely,[20] the degree to which the lawyer acted willfully,[21] the magnitude of the violation *1172 of a disciplinary order,[22] the level of similarity between past and present offenses,[23] whether the lawyer has a "long track record of repeating the same misconduct,"[24] and the amount of time that elapsed between past and present offenses.[25]
Here, the elements of ABA Standard 8.1(a) and 8.1(b) are satisfied: Respondent knowingly violated a prior disciplinary order and knowingly committed similar misconduct (practicing law without a valid law license) on two successive occasions. Nevertheless, the degree of injury appears to be quite small, the magnitude of the misconduct very modest, and the pattern of misconduct only an incipient one. As such, the Court finds that ABA Standards 8.1(a) and 8.1(b) are not fitting here, and the Court begins its analysis with the presumptive sanction of suspension.
ABA Standard 9.0-Aggravating and Mitigating Factors
Aggravating circumstances include any considerations or factors that may justify an increase in the degree of the presumptive sanction to be imposed, while mitigating circumstances may warrant a reduction in the severity of the sanction.[26] Two aggravating factor is present here: Respondent has prior discipline (the order of suspension premised on his practice of law while administratively suspended) and he acted dishonestly.[27] The Court is unaware of any mitigating factors.
Analysis Under ABA Standards and Colorado Case Law
The Court recognizes the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[28] and is mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[29] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.
Here, the People argue that the most appropriate discipline would be a suspension lasting between six months and three years, although they also say that disbarment would not be an unreasonable sanction. In recommending suspension, the People observe that under C.R.C.P. 251.29(b), Respondent must pass the written bar examination before his license can be reinstated because he has remained under suspension for longer than five years. And while the People recognize that the Colorado Supreme Court has previously disbarred some lawyers who practiced law in defiance of disciplinary suspension orders, the People say those cases involved more egregious circumstances, such as harming clients or deriving fees from the unauthorized practice of law.
In examining the applicable case law, the Court looks to past decisions involving disobedience *1173 of disciplinary-not administrative-suspension orders, since the Colorado Supreme Court treats violations of disciplinary suspension orders as more serious than violations of administrative suspension orders.[30]
In People v. Zimmermann , the most recent applicable case, the Colorado Supreme Court considered a stipulation to a three-year suspension or disbarment for a lawyer who violated a disciplinary suspension order and committed other misconduct.[31] In one client representation before the effective date of his disciplinary suspension, the lawyer neglected his client's matter, commingled client funds with his own, and failed to protect his client's interests upon termination.[32] In a second representation, the lawyer neglected the client's case, failed to inform his client that his suspension would soon take effect, dishonestly failed to inform his client of his suspension after the suspension took effect, and practiced law while suspended.[33] In the last representation, the lawyer accepted a new case after his suspension was ordered but before the suspension took effect, neglected the case, and acted dishonestly.[34] The Colorado Supreme Court applied ABA Standard 8.1(a) and disbarred the lawyer.[35] The Colorado Supreme Court rejected the lawyer's argument that a three-year suspension would suffice, noting that prior cases imposing sanctions less than disbarment involved violation of administrative-not disciplinary-suspension orders and also noting that the lawyer had caused his clients actual harm because the clients realized little benefit from the fees they paid the lawyer just before his suspension took effect.[36]
Similarly, in People v. Redman , the Colorado Supreme Court accepted a stipulation to disbarment for a lawyer who represented multiple clients in contravention of a disciplinary suspension order.[37] The decision cited both ABA Standards 8.1(a) and 8.1(b) and observed that "[i]n previous cases, [the Colorado Supreme Court had] found disbarment warranted when a lawyer practices law while suspended or otherwise violates an order of suspension and causes harm to a client."[38] Although no actual harm to clients was noted in Redman , the lawyer's unauthorized practice of law was extensive.[39]
In People v. Ross , the Colorado Supreme Court imposed a three-year suspension where a lawyer breached a disciplinary suspension order by practicing law.[40] The lawyer tried a criminal case for a client during his suspension and then defaulted in the ensuing disciplinary proceeding.[41] The decision did not identify any presumptive sanction under the ABA Standards .[42] Rather, the Colorado Supreme Court noted that the lawyer did not harm any client and observed that five aggravating factors were present, arriving at the conclusion that a three-year suspension was appropriate.[43]
People v. Cain presents an even greater contrast with Zimmermann and Redman .[44] In that case, a lawyer who had not been reinstated from a 1990 disciplinary suspension prepared warranty deeds, deeds of trust, and a promissory note for another person in *1174 1994.[45] In its 1998 decision, the Colorado Supreme Court mentioned several of the ABA Standards but did not select an applicable presumptive sanction, noting that the lawyer's mental state was "not readily determinable."[46] Emphasizing the "unusual" facts that the lawyer had already remained suspended for eight years and would have to pass the bar examination before returning to the practice of law, the Cain court elected to publicly censure the lawyer.[47]
This Court also recognizes that among other United States jurisdictions, "[g]enerally, courts uniformly impose disbarment [when a lawyer suspended from the practice of law continues to practice], with many of them emphasizing that lawyers who have violated prior disciplinary orders exhibit a basic disrespect for the court and its authority."[48]
This is a close case, and the Court finds that either disbarment or suspension could be justified here. Ultimately, recognizing the People's position that a suspension is warranted and mindful of the Colorado Supreme Court's directive to exercise discretion in applying sanctions based on the facts of each particular case, the Court deems a suspension most fitting. Respondent's misconduct was limited in nature, did not significantly harm the recipient of his legal services, and was not part of an extensive pattern, suggesting that ABA Standards 8.1(a) and (b) should not apply here. In addition, Respondent has been suspended since 2010 and must pass the written bar examination before his license can be reinstated. This Court thus finds a suspension to be most in keeping with the tenor of Colorado Supreme Court case law. But recognizing the colorable argument that ABA Standards 8.1(a) and (b) should apply here as well as the presence of two aggravating factors, this Court finds that a short suspension would be insufficient and concludes instead that Respondent should instead be suspended for the lengthy duration of three years.
IV. CONCLUSION
Respondent defied an order suspending his license to practice law when he acted as another person's legal representative. This misconduct mirrored his earlier practice of law in defiance of an administrative suspension order. His actions flouted the authority of the Colorado Supreme Court and will be answered by a three-year suspension.
V. ORDER
The Court therefore ORDERS :
1. KEM W. SWARTS , attorney registration number 29242 , will be SUSPENDED FROM THE PRACTICE OF LAW FOR THREE YEARS . The SUSPENSION SHALL take effect only upon issuance of an "Order and Notice of Suspension."[49]
2. To the extent applicable, Respondent SHALL promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.
3. Respondent also SHALL file with the Court, within fourteen days of issuance of the "Order and Notice of Suspension," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.
4. The parties MUST file any posthearing motion on or before Thursday, March 15, 2018 . Any response thereto MUST be filed within seven days.
5. The parties MUST file any application for stay pending appeal on or before *1175 Thursday, March 21, 2018 . Any response thereto MUST be filed within seven days.
6. Respondent SHALL pay the costs of this proceeding. The People SHALL submit a statement of costs on or before Thursday, March 15, 2018 . Any response thereto MUST be filed within seven days.

See C.R.C.P. 251.1(b).

Compl. ¶ 12.

Compl. ¶ 14.

Compl. ¶ 15.

See Compl. ¶ 15.

Found in ABA Annotated Standards for Imposing Lawyer Sanctions (2015).

See In re Roose , 69 P.3d 43, 46-47 (Colo. 2003).

See In re Mittower, 693 N.E.2d 555 (Ind. 1998) (holding that designations of "esquire," "general counsel," and "attorney-in-fact," on business cards and letterhead by one who no longer held a license to practice law constituted the unauthorized practice of law); Kentucky Bar Ass'n v. Brooks , 325 S.W.3d 283, 289 (Ky. 2010) (same).

See People v. Shell , 148 P.3d 162, 171 (Colo. 2006) (noting that the unauthorized practice of law may include "acting in a representative capacity in protecting, enforcing, or defending the legal rights and duties of another" as well as "holding oneself out as the representative of another in a legal action") (quotations omitted).

Here, Respondent's practice of law while subject to a disciplinary suspension order is similar to his earlier practice of law while subject to an administrative suspension order.

See, e.g., People v. Redman , 902 P.2d 839, 839-40 (Colo. 1995).

See, e.g., People v. Ross , 873 P.2d 728, 729-30 (Colo. 1994) ; People v. Wilson , 832 P.2d 943, 945 (Colo. 1992).

Annotated Standards for Imposing Lawyer Sanctions at 381.

Annotated Standards for Imposing Lawyer Sanctions at 385.

Annotated Standards for Imposing Lawyer Sanctions at 390.

See Annotated Standards for Imposing Lawyer Sanctions at 399.

See ABA Standard 1.3 (stating that the Standards are designed to promote, among other things, "consistency in the imposition of disciplinary sanctions for the same or similar offenses within and among jurisdictions").

See id . (noting that the Standards , while "setting forth a comprehensive system for determining sanctions," are also meant to permit "flexibility and creativity in assigning sanctions in particular cases of lawyer misconduct").

See Ross , 873 P.2d at 730 (giving apparent weight to the fact that the respondent did not harm any client); People v. Zimmermann , 960 P.2d 85, 88 (Colo. 1998) (indicating that harm to clients is a relevant factor in cases where a lawyer has practiced law while suspended); Redman , 902 P.2d at 840 (same). This Court notes that arguably some degree of injury or potential injury to the legal system and legal profession is always present when a lawyer violates a prior disciplinary order or engages in misconduct of the type for which he or she was previously suspended. Thus, to meaningfully apply the portion of Standards 8.1(a) and (b) calling for analysis of injury, careful consideration of the actual degree of injury or potential injury is important.

See Annotated Standards for Imposing Lawyer Sanctions at 390 (discussing the need to "protect the public from further misdeeds when lesser sanctions have proved inadequate to dissuade similar misconduct").

Cf. People v. Cain , 957 P.2d 346, 347 (Colo. 1998) (in a case involving a lawyer who practiced law while subject to a disciplinary suspension order, raising concerns about the undeterminable nature of the lawyer's mental state); People v. James , 731 P.2d 698, 700 (Colo. 1987) (emphasizing that the nature of the respondent's actions reflected a "callous disregard" of the rules regulating the practice of law).

Cf. Wilson , 832 P.2d at 945 (considering the "seriousness of the respondent's misconduct" in determining that the lawyer's continued practice of law while under a suspension order warranted disbarment).

See Annotated Standards for Imposing Lawyer Sanctions at 388 ("When past and present offenses are identical or strikingly similar, courts are more likely to find baseline disbarment is warranted under Standard 8.1(b).").

Annotated Standards for Imposing Lawyer Sanctions at 389; see also Ross , 873 P.2d at 730 (electing to suspend rather than disbar a respondent who practiced law while suspended, noting that he did not have a particularly extensive disciplinary history).

See Annotated Standards for Imposing Lawyer Sanctions at 392 (noting that timing considerations may arise in the context of identifying baseline sanctions and applicable aggravation). The Court also notes that where both Standard 8.1(a) and 8.1(b) apply, there is an even stronger argument that the presumptive sanction should be pegged at disbarment. The Court views the factors identified above as relevant also to application of Standards 8.2 and 8.3.

See ABA Standards 9.21 & 9.31.

ABA Standards 9.22(a)-(b).

See In re Attorney F. , 285 P.3d 322, 327 (Colo. 2012) ; In re Fischer , 89 P.3d at 822 (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

In re Attorney F. , 285 P.3d at 327 (quoting In re Rosen , 198 P.3d 116, 121 (Colo. 2008) ).

See Zimmermann , 960 P.2d at 88.

Id . at 85-88.

Id . at 86.

Id . at 86-87.

Id . at 87.

Id . at 87-88.

Id . at 88.

902 P.2d at 839-40.

Id . at 840 (citing, inter alia , Wilson , 832 P.2d at 945 ("A lawyer's continued practice of law while under an order of suspension, with no efforts to wind up the legal practice, and failure to take action to protect the legal interests of the lawyer's clients, warrants disbarment.") ).

Id . at 839-40.

873 P.2d at 729-30.

Id .

See id . at 730.

Id .

957 P.2d at 346-47.

Id . at 346.

Id . at 347.

Id . at 346-47.

Annotated Standards for Imposing Lawyer Sanctions at 382.

In general, an order and notice of sanction will issue thirty-five days after a decision is entered under C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.